JiKNOLL, Judge.
An excess insurer filed suit against a primary insurer, seeking reimbursement for expenses incurred because of primary insurer’s failure to defend mutual insured. The trial court granted the excess insurer’s motion for summary judgment, and awarded reimbursement of expenses in addition to penalties and attorney’s fees. Primary insurer appeals. We affirm.
FACTS
Canal Insurance Company (Canal) provided primary insurance coverage to Grayson Mobile Home Transporters, Inc. (Grayson) for a tractor-trailer rig that was driven by Robert McCullough, a Grayson employee. Although Empire Fire and Marine Insurance Company (Empire) did not issue a policy covering that vehicle, it |2was liable as an excess insurer by an Interstate Commerce Commission MCS-90 endorsement.[1]
*302 On April 15, 1991, the rig driven by McCullough was involved in an accident near Arnaudville, Louisiana. Marilyn Credeur, who was accompanied by Hilda Credeur, alleged that she was forced from the roadway when the tractor trailer driven by McCullough crossed the center line. On April 14, 1992, the Credeurs filed suit against McCullough, Grayson, and Empire Pire and Marine Insurance Company as Grayson’s insurer. The Credeurs subsequently learned that although Empire insured most of the trucks used by Grayson, it did not issue a policy covering the rig driven by McCullough.
Prior to the accident, Empire had specifically refused to issue a policy covering the rig driven by McCullough because McCullough could not meet its underwriting requirements. As an alternative, Grayson had purchased a separate policy covering McCullough’s rig from Canal Insurance Company. On June 12, 1992, plaintiffs amended them petition to add Canal as Grayson’s insurer.
Canal denied coverage to Grayson, citing a “truckman’s endorsement” in its policy, and refused numerous requests to defend Gray-son in the lawsuit. Since Empire was potentially liable under the MCS-90 endorsement, it undertook the defense of Grayson and informed Canal that it would ultimately seek reimbursement for providing a defense to Grayson. On January 29, 1993, Empire assigned defense counsel to represent Grayson.
IsGrayson independently pursued the coverage issue with Canal, by having its corporate counsel file suit against Canal in Mississippi, where the policy had been purchased. On July 16,1993, Canal settled the Mississippi lawsuit and agreed to defend Grayson in the Louisiana litigation. Canal also agreed to pay the attorney’s fee of Grayson’s corporate counsel. Nevertheless, Canal did not provide defense counsel for Grayson in the Louisiana litigation until September 27, 1993, and only then after several requests to do so.
On March 4, 1994, the Louisiana court ruled on the issue of insurance coverage. The court held that Canal provided primary liability coverage on the rig driven by McCullough, and that Empire was liable as excess insurer under the Form MCS-90.
On March 28, 1994, Empire filed a cross-claim against Canal, seeking reimbursement for expenses incurred in defending Grayson from January 29, 1993 through September 27, 1993, when Canal provided defense counsel. The trial court granted Empire’s motion for summary judgment on its claim for reimbursement, and awarded $13,473.40 as reimbursement for defense expenses. In addition, the trial court found that Canal was arbitrary and capricious in its failure to defend Grayson, and it awarded $2,500 in penalties and $1,500 in attorney’s fees for the costs of bringing the motion.
Canal appeals, assigning six errors.
EMPIRE’S RIGHT OF SUBROGATION
Canal asserts that Empire has no right to recover the expense of defending Grayson because Empire is neither legally nor conventionally subrogated to Grayson. The trial court cited Great Southwest Fire Insurance Co. v. CNA Insurance Companies, 557 So.2d 966 (La.1990) in support of its ruling on the summary [ ¿judgment. In Great Southwest, an excess insurer (Great Southwest) sued the primary insurer (Transportation) for the primary insurer’s failure to settle a case in good faith. In holding that the excess insurer was legally subrogated to the insured, the Louisiana Supreme Court stated:
We see no error in the Court of Appeal’s conclusion that Great Southwest became conventionally and legally subrogated to Contract Cleaners’ right against Transportation when Great Southwest performed the obligation that the primary insurer owed its insured because of its failure to perform in good faith.
[[Image here]]
Performance, which is the normal mode of extinction of an obligation by an obligor, may also be rendered by a third person, unless the obligor or the obligee -has a *303 specific interest in the obligation fulfilled by the obligor personally.
[[Image here]]
Performance by a third person causes sub-rogation to take effect when authorized by law or by agreement. La.C.C. art. 1855. Accordingly, when the creditor receives his payment from a third person who, by operation of law or by virtue of contract, is substituted in his rights, this payment effects a change in the person of the creditor rather than an extinction of the obligation.
Great Southwest, 557 So.2d at 967-968.
A claim can also be made in the case of a conventional subrogation. A case exactly on point on this issue is Maryland Casualty Co. v. Marquette Casualty Co., 143 So.2d 249 (La.App. 4 Cir.1962). In Maryland, the excess insurer (Maryland) undertook the defense of the insured (Gulf) upon the primary insurer’s (Marquette) refusal to defend. The court allowed the recovery by the excess insurer of expenses in defending the suit, stating:
By having failed to honor its contractual duty of defending the lawsuit on behalf of Gulf, Marquette became indebted unto Gulf for the cost of the defense, and Gulfs claim against Marquette passed to Maryland under the subrogation clauses of that insurer’s policy, reading thus:
“In the event of any payment under this policy, the company shall be subrogated to all the insured’s Rrights of recovery therefor against any person or organization* * ⅜”
Maryland, 143 So.2d at 251.
Significantly, the policy issued by Empire to Grayson contains a similar clause which states:
If any person or organization to or for whom we make payment under this coverage form has rights to recover from another, those rights are transferred to us.
The court in Maryland found legal subro-gation in addition to conventional subrogation, stating:
Aside from the provisions of the policy with respect to subrogation, Maryland, under the law of Louisiana, became the legal subrogee of the plaintiff in the damage suit as against Marquette for the $250.
[[Image here]]
Having become legally subrogated to all the creditor’s rights, Maryland may use all means it can to enforce payment from Marquette.
******
Our conclusion is that Maryland, as the excess insurer, which was forced to defend the suit and make settlement for and on behalf of Gulf to protect both Gulf and itself is entitled to recover from Marquette which was the primary insurer.
Maryland, 143 So.2d at 251-252. See also Hanover Ins. Co. v. Highlands Ins. Co., 511 So.2d 1296 (La.App. 2 Cir.1987).
We find that the trial court did not err in its determination that Empire was subrogat-ed to Grayson’s right to be reimbursed for his defense. The record evidence and the jurisprudence support a finding in favor of Empire of both conventional and legal subro-gation against Canal.
PENALTIES AND ATTORNEY’S FEES
La.R.S. 22:1220 imposes a good faith duty on insurers to adjust claims fairly and promptly, and to make a reasonable effort to settle claims. Breach of this duty |6makes the insurer liable for any damages sustained as a result of the breach. Additionally, the insurer can be liable for penalties.
Recovery under the penalty provisions of La.R.S. 22:1220 extends to third parties in addition to the insured. Midland Risk Ins. v. State Farm Auto, 93-1611 (La.App.Cir. 9/21/94), 643 So.2d 242. Third parties can recover penalties and attorney’s fees based on an insurer’s arbitrary and ca-. prieious failure to defend. Allen v. Keeney, 532 So.2d 521 (La.App. 1 Cir.1988). We further note that Empire was conventionally subrogated to Grayson’s rights, and therefore its recovery was not limited by La.Civ. Code árt. 1830.
SUMMARY JUDGMENT
Since we find that the judgment of the trial court is well grounded in the appli *304 cable law and jurisprudence, the main issues raised by Canal on appeal concern the propriety of granting summary judgment under the facts of the instant case. Canal asserts that summary judgment was improper because there are genuine issues of material fact, namely that the trial court improperly awarded attorneys fees that were not incurred in Grayson’s defense, and that it erred in finding Canal was arbitrary and capricious.
In the recent case of Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, the Louisiana Supreme Court provided a thorough review of the law of summary judgment. Smith provided, in relevant part:
Summary judgments are reviewed on appeal de novo. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). An appellate court thus asks the same questions as does the trial court in determining whether summary jüdgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. McCrae v. Hankins, 720 F.2d 863, 865 (5th Cir.1983); see Wright, Miller & Kane, Federal Practice and Procedure, § 2716 (Supp.1991). “Stated conversely, [summary judgment] should be denied if there is (1) a genuine tissue of fact and(2) it is material to the case.” Brown v. B & G Crane Service, Inc., 172 So.2d 708, 710 (La.App. 4th Cir.1965).
A “genuine issue” is a “triable issue.” Toups v. Hawkins, 518 So.2d 1077, 1079 (La.App. 5th Cir.1987) (citing Brown, supra). More precisely, “[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes.”
* * * * * *
A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d 577, 583 (La.1989). “[F]acts are material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” South Louisiana Bank v. Williams, 591 So.2d 375, 377 (La.App. 3d Cir.1991), writs denied, 596 So.2d 211 (La. 1992).
* * * * * *
Summary judgment is seldom appropriate for determinations based on subjective facts, such as motive, intent, good faith, knowledge and malice. Penalber, 550 So.2d at 583. (FNI9) As we put it in Penalber, summary judgment “is rarely appropriate for a determination based on subjective facts.” 550 So.2d at 583 (emphasis supplied). Nonetheless, Louisiana courts have recognized that, while “rare”, summary judgment may be granted on subjective intent issues when no issue of material fact exists concerning the pertinent intent. Simoneaux v. E.I. du Pont de Nemours and Co., 483 So.2d 908, 912 (La.1986) (holding that “[sjummary judgment is an appropriate method for disposing of a ease wherein intent is a critical question”); Carter v. BRMAP, 591 So.2d 1184, 1188 (La.App. 1st Cir.1991); Fabre v. Kaiser Aluminum & Chemical Corp., 499 So.2d 1239 (La.App. 4th Cir.1986); Sally Beauty Co. v. Barney, 442 So.2d 820, 822 (La.App. 4th Cir.1983) (finding intent clear under facts of case).
Smith, 639 So.2d at 751-752.
After a thorough examination of the supporting documents presented by Empire, we find that Empire has amply proved that it is entitled to reimbursement for its expenses incurred in its defense of Grayson. Canal objects, alleging that some of the fees charged by Empire were not incurred in defense of Grayson, but rather were incurred in pursuit of the coverage issue. Generally, if an insured hires an attorney to represent him in a coverage dispute, he will have to bear those costs himself. |⅞ Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213. Nevertheless, Canal has submitted nothing to support its argument, but merely asserts that this constitutes a disputed issue of material fact.
*305 While we agree that Empire is not entitled to fees incurred in pursuit of coverage, we note that Empire does not assert that it is owed reimbursement for those expenses. Empire avers that the fees and expenses listed in the invoices submitted in support of its motion are solely related to defense of Grayson on the main demand. La.Code Civ.P. art. 967 provides, in relevant part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine iss.ue for trial. If he does not respond, summary judgment, if appropriate, shall be rendered against him.
Because Canal has failed to offer any specific facts showing that the expenses submitted by Empire were incurred in pursuit of coverage, this is not a genuine issue of material fact. Summary judgment on this point was proper.
Canal also appeals the award of penalties and attorney’s fees, asserting that summary judgment was improper because whether it was arbitrary and capricious is a genuine issue of material fact. We disagree. Canal’s arbitrary and capricious refusal to defend Grayson is well-documented in the correspondence and affidavits submitted by Empire. We find it especially significant that Canal refused to provide defense counsel even after it had agreed that it owed a defense. Canal settled the Mississippi lawsuit with Grayson on July 16, 1993, and agreed to provide defense counsel. After ignoring several subsequent requests, Canal finally provided defense counsel on September 27, 1993. In effect, Canal’s delay inured to its benefit since Empire continued to defend Canal’s insured in this complicated and costly litigation.
| aOnce again, Canal has not submitted any evidence to support its allegation that it was not arbitrary and capricious. It merely asserts that this is a factual issue and is therefore inappropriate for summary judgment. We recognize that the determination of whether an insurer was arbitrary and capricious is necessarily subjective. Howev- • er, this is one of the rare eases in which such a subjective determination presents no genuine issue of material fact. Canal has made no real effort to dispute the facts raised by Empire in its motion and supporting documents. Under the undisputed facts of the case sub judice, reasonable minds must inevitably conclude that Canal was arbitrary and capricious.
DOCUMENTARY EVIDENCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Canal asserts that the documentary evidence submitted by Empire in support of its motion for summary judgment was inadmissible and was improperly considered by the court. Canal asserts that under La.Code Civ.P. art. 966, only “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits” may be considered in deciding a motion for summary judgment. It asserts that correspondence submitted by Empire is inadmissible since it is not allowed under La.Code Civ.P. art. 966. We disagree, especially since the objectionable documents were verified by affidavit of Empire’s counsel.
We find that the relevant jurisprudence and La.Code Civ.P. art. 967 clearly allow properly verified documents to be considered in addition to supporting affidavits in deciding a motion for summary judgment. Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036 (La.App. 3 Cir.1992); Burke v. Occidental Life Ins. Co. of California, 427 So.2d 1165 (La.1983). Counsel for Empire filed an affidavit verifying that the documents were generated in the course of the litigation 110and that each was a correct and true copy of what it purported to be. We find no error in the trial court’s consideration of the documents.
For the foregoing reasons, we find that the motion for summary judgment submitted by Empire Fire and Marine Insurance Company was properly granted. The judgment of the trial court is affirmed. Costs of this appeal *306 are assessed to appellant, Canal Insurance Company.
AFFIRMED.

. Under Sections 29 and 30 of the Motor Carrier Act of 1980, Form MCS-90 must be made part of insurance policies issued to motor carriers. The MCS-90 provides insurance in cases of public liability involving a vehicle displaying the ICC permit of the insured motor carrier, regardless of *302 whether the vehicle is actually named in the liability policy. The rig driven by McCullough was displaying Grayson's ICC permit.