840 So.2d 1248 (2003)
Angel Sonnier McGEE
v.
OMNI INSURANCE COMPANY.
No. 02-1012.
Court of Appeal of Louisiana, Third Circuit.
March 5, 2003.
Rehearing Denied April 16, 2003.
*1249 Tobin J. Eason, Weiss & Eason, New Orleans, LA, for Defendant/Appellant, Omni Insurance Company.
M. Terrance Hoychick, Young, Hoychick & Aguillard, Eunice, LA, for Plaintiff/Appellee, Angel Sonnier McGee.
*1250 Court composed of SYLVIA R. COOKS, OSWALD A. DECUIR, and JIMMIE C. PETERS, Judges.
PETERS, J.
In the matter now before us, Omni Insurance Company (Omni) appeals a trial court judgment awarding Angel Sonnier McGee damages, penalties, and attorney fees pursuant to La.R.S. 22:1220. For the following reasons, we reverse in part and affirm in part.

DISCUSSION OF THE RECORD
The litigation has as its origin a June 25, 1996 automobile accident which occurred in Eunice, Louisiana. On that day, a vehicle being driven by Jessica Bellard struck a vehicle being driven by Angel Sonnier McGee. On June 25, 1997, Ms. McGee filed suit to recover the damages she sustained in the accident, naming Ms. Bellard and Omni, Ms. Bellard's liability insurer, as defendants. The liability insurance policy issued to Ms. Bellard by Omni provided liability coverage of up to $25,000.00 per person and $50,000.00 per accident.
After settlement negotiations were unsuccessful, Ms. McGee proceeded to trial against Ms. Bellard and Omni on February 15, 2000. After trial, the trial court rendered judgment in favor of Ms. McGee and against Ms. Bellard and Omni in the amount of $50,000.00 together with legal interest and costs of court, subject to Omni's policy limits. Omni had previously deposited $25,000.00 in the registry of the court, and the judgment recognized a credit for that deposit. Thereafter, Omni paid the accumulated interest on the $25,000.00 deposit as well as the costs of court, but there remained an excess judgment against Ms. Bellard.
On May 23, 2000, Ms. Bellard and Ms. McGee entered into an agreement in which Ms. Bellard assigned to Ms. McGee her rights against Omni for "failure to provide a good faith defense to her." In exchange for the assignment, Ms. McGee agreed to refrain from attempting to collect the judgment against Ms. Bellard until she had exhausted all legal collection remedies against Omni. This agreement gave rise to the current litigation.
Using this assignment of rights, Ms. McGee filed suit against Omni on August 8, 2000, asserting that Omni had failed to provide a good faith defense to Ms. Bellard and that its failure resulted in the excess judgment against her. After trial, the trial court rendered judgment in Ms. McGee's favor and against Omni, awarding Ms. McGee damages of $25,000.00 together with legal interest from the date of the filing of her original suit against Ms. Bellard, penalties of twice the amount of damages awarded together with legal interest from the date of judicial demand in the instant action, attorney fees in the amount of thirty-three and one-third percent of all sums recovered under the judgment, and specific expenses of $714.24. Additionally, the judgment provided that, in the event Omni was unsuccessful on appeal, the attorney fee would be increased to forty percent.
The evidence submitted at the January 4, 2002 trial consisted primarily of stipulations and documentary evidence. A review of this evidence reveals that few facts are in dispute. The record establishes that as early as March of 1997, Omni was aware that Ms. McGee had already incurred over $18,000.00 in special damages as a result of the June 25 accident. In correspondence to Omni dated March 5, 1997, Ms. McGee offered to settle her claim for $40,000.00. Apparently without even consulting its insured, Omni rejected the offer.
The parties continued to negotiate after suit was filed, and, by correspondence *1251 dated September 15, 1998, Ms. McGee's counsel reduced her settlement offer to Omni's $25,000.00 policy limit together with accrued legal interest from date of judicial demand. Omni responded to this offer on September 30, 1998, through a letter written by Thomas A. Bound, one of its claims adjusters. In that response, Mr. Bound stated that "OMNI WILL OFFER OUR POLICY LIMITS OF $25,000.00 AT THIS TIME. WE WILL NOT BE ABLE TO PAY ANY AMOUNT ABOVE OUR POLICY LIMITS IN SETTLEMENT OF THIS CLAIM." By correspondence to Mr. Bound dated October 2, 1998, Ms. McGee's counsel stated that its settlement offer would expire on October 10, 1998, and additionally stated: "So that there is no misunderstanding, the plaintiff is willing to release your insured for the payment of your policy limits plus legal interest and all court costs." Mr. Bound responded on October 14, 1998, by informing Ms. McGee's counsel in writing that Omni's previously communicated offer to settle for only its policy limit would expire on December 14, 1998.
Mr. Bound's refusal pay the accrued interest was not an act supported by Omni's counsel of record. By correspondence dated October 14, 1998, Omni's counsel advised Mr. Bound that Omni should "strongly consider" Ms. McGee's offer to settle. This recommendation was again communicated to Mr. Bound by correspondence from Omni's counsel dated October 26, 1998. Mr. Bound obviously declined to take this advice as no new offer to settle was forthcoming from Omni.
During settlement negotiations, Omni had little communication with its insured. Ms. Bellard submitted an affidavit into evidence wherein she asserted that Omni failed to inform her of any settlement offers prior to January 1, 1999, failed to seek her opinion concerning settlement, and failed to inform her that Omni would tender its policy limits but would not pay the accrued legal interest. Additionally, she asserted:
Had [she] been notified by OMNI Insurance Group or its attorneys of the amount of medical bills [Ms.] McGee had incurred in October of 1998 ... and that [Ms. McGee] was willing to release [her] and OMNI in exchange for payment of the policy limits of $25,000 plus court costs and all legal interest due at the time, [she] would have demanded that OMNI settle the claim (for the amounts demanded by [Ms. McGee]) in order to protect [her] from the potential excess judgment which ultimately was taken against [her].
The earliest evidence of any communication between Omni and Ms. Bellard appears in the form of a notarized statement signed by Mr. Bound on February 8, 2001. In his statement, Mr. Bound asserted that he forwarded Ms. Bellard a letter dated December 3, 1998, that he talked to her on that same day, and that he "personally advised Ms. Bellard of the status of the negotiation including that Omni was going to pay its policy limits of $25,000, but not any legal interest pursuant to policy language." He recalled speaking with Ms. Bellard "because he made notes of that conversation." However, he did not produce the notes upon which these assertions were made. Additionally, the December 3, 1998 correspondence which Mr. Bound claims to have forwarded to Ms. Bellard did nothing to inform Ms. Bellard of the specific status of the litigation. It appears to be a form letter and stated the following:
WE ARE IN THE PROCESS OF INVESTIGATING THE ABOVE CAPTIONED LOSS. OUR INFORMATION INDICATES THE CLAIMS ARISING FROM THIS LOSS MAY EXCEED *1252 OUR INSURED'S POLICY LIMITS. OUR INSURED'S POLICY WITH OMNI PROVIDES LIABILITY LIMITS OF $25,000 PER PERSON AND $50,000 PER ACCIDENT FOR BODILY INJURY AND $25,000 FOR PROPERTY DAMAGE.
IF YOU HAVE COLLISION OR UNINSURED MOTORIST COVERAGE UNDER YOUR OWN INSURANCE POLICY, PLEASE NOTIFY YOUR INSURANCE CARRIER OF THIS LOSS AS SOON AS POSSIBLE. PLEASE MITIGATE THE DAMAGES ASSOCIATED WITH YOUR LOSS, THIS IS TO INCLUDE RENTAL, TOWING, STORAGE AND ETC. IF YOU HAVE ANY QUESTIONS CONCERNING THE CONTENTS OF THIS LETTER, PLEASE CONTACT ME AT THE NUMBER BELOW.
Apparently not satisfied with the advice of its trial counsel concerning settlement, Omni sought an opinion on the issue from a member of a Shreveport, Louisiana law firm and was given a written response by a member of that firm on March 1, 1999. In that correspondence, the Shreveport attorney gave Mr. Brett LaFoy, an Omni employee identified as a "Litigation Specialist," the following opinion:
[T]he insurer does owe a duty to its insured to pay policy limits plus legal interest prior to judgment in a situation where the plaintiff will accept same in settlement of all claims against its insured and in a case where there is no issue as to liability and it is substantially certain that a judgment will be rendered in excess of the policy limits. Although statutory law does not impose the obligation to pay interest prior to judgment, failure to do so could violate the insurer's duty of good faith to its insured.

(Emphasis added.)
Despite this clear statement from the Shreveport attorney, Mr. LaFoy wrote Ms. Bellard the following letter the very next day, March 2, 1999:
As you know, Angel McGee is presenting a bodily injury claim as a result of [the June 25 accident]. She has hired an attorney and filed suit. We have attempted to resolve this claim by tendering the bodily injury limits of $25,000 under Charles Bellard's policy. Ms. McGee and her attorney have rejected this offer. We are now at a position to inquire if you are willing to contribute any money to attempt to settle this claim.

If we are not able to settle this case, you may wish to hire legal counsel to represent your interests and for any judgement over the bodily injury limits of $25,000. While this case may have a value in excess of the available bodily injury limits, we will continue all efforts to resolve this claim within these limits and obtain a full release. Please carefully consider your options in this case. Please contact us at the number below once you have reached a decision.
(Emphasis added.)
By correspondence dated April 8, 1999, Mr. LaFoy informed Ms. Bellard of the following:
WE ARE WRITING YOU TO UPDATE YOU ON THE STATUS OF THIS CASE. THE PLAINTIFF ATTORNEY IS STILL DEMANDING YOUR POLICY LIMITS OF $25,000 PLUS INTEREST. UNDER YOUR POLICY, WE WILL PAY UPTO [sic] YOUR POLICY LIMITS OF $25,000. ANY JUDGEMENT OVER YOUR POLICY LIMITS OR INTEREST OWED WILL BE YOUR RESPONSIBILITY. YOU MAY WISH TO CONSIDER CONTRIBUTING SOME MONEY IN AN ATTEMPT TO SETTLE THIS CASE. YOU MAY WISH *1253 TO CONSULT SEPARATE LEGAL COUNSEL TO PROTECT YOUR INTERESTS.
(Emphasis added.)
Omni's trial counsel continued to advise that Ms. McGee's settlement offer be accepted. By correspondence dated April 9, 1999, Omni's counsel informed Mr. LaFoy that it was his recommendation that "we simply pay the policy limits plus legal interest accrued to date to settle the [litigation]." In support of his recommendation, the attorney attached a copy of Hodge v. American Fidelity Fire Insurance Co., 486 So.2d 233 (La.App. 3 Cir.), writ denied, 489 So.2d 917 (La.1986), to the correspondence, a case previously cited to Mr. LaFoy by the Shreveport attorney. The attorney informed Mr. LaFoy that "there is nothing we really gain by depositing our policy limits into the registry of the court. Legal interest will continue to accrue from the date of judicial demand.... There would be no reason to deposit the policy limits plus interest, because we can simply settle the case on those terms." Despite this opinion, Mr. LaFoy forwarded the policy limits to Omni's counsel of record for deposit into the registry of the court on April 16, 1999.
After the trial court rendered judgment in Ms. McGee's favor, Omni appealed, asserting five assignments of error:
1. Omni was with probable cause in defending its position based on policy language typical of all policies and which has not been ruled to be against public policy.
2. Omni was not arbitrary or capricious in attempting to resolve the underlying cause of action, when weeks after the plaintiff's first offer, Omni responded with an offer of roughly 90% of plaintiff's initial offer (which was policy limits).
3. Omni was in constant communication with its insured, Ms. Bellard; therefore, it was not in bad faith in handling the claim and its actions do not justify a claim for an excess judgment.
4. The trial court could not award attorney's fees pursuant to R.S. 22:1220 even if the court finds Omni arbitrary, capricious and without probable cause.
5. Double damages pursuant to R.S. 1220 were not justified in this matter.

OPINION
Because the first three assignments relate to the question of good faith, we will consider them together. Louisiana Revised Statute 22:1220(A) provides that an insurer "owes to his insured a duty of good faith and fair dealing." It further provides that "[t]he insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." Id. (emphasis added). In defining what act or acts constitute a breach of the duty of good faith and fair dealing, La.R.S. 22:1220(B) provides:
Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

*1254 (4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
Further, "the wording and structure of [Acts 1990, No. 308, § 1, whereby La.R.S. 22:1220 was added] strongly suggest that the legislature intended Subsection B to constitute an exclusive list of the types of conduct for which damages and penalties can be sought by insureds and third-party claimants pursuant to the statute.... [T]he only acts which give rise to a cause of action for violation of La. R.S. 22:1220 are the specific acts enumerated in Subsection B(1)-(5)." Theriot v. Midland Risk Ins. Co., 95-2895, p. 7 (La.5/20/97), 694 So.2d 184, 188. That being the case, only La.R.S. 22:1220(B)(1) is applicable to the matter before us.
In its written reasons for judgment, the trial court concluded that Omni did not even inform Ms. Bellard of Ms. McGee's September 15, 1998 settlement offer until November 15, 1998, or long after it had expired. The trial court further noted that from the very outset of the litigation Omni was aware that liability on the part of Ms. McGee was very likely and that a judgment would probably exceed the policy limits. Additionally, the trial court concluded that as of September 15, 1998, Omni was "aware that Ms. McGee had incurred in excess of $15,000.00 in medical bills and was also claiming over $6,000.00 in lost wages." Additionally, the trial court determined the following:
[A] review of all correspondence to Ms. Bellard fails to indicate that she was ever told that her counsel believed that she would likely be found liable for causing the accident and that an excess judgment was likely to be rendered against her. She was never told that the medical expenses and lost wage claims alone, that were being claimed by McGee, exceeded her policy limits and she was never told that her policy did provide for the payment of legal interest on damage awards once judgment was rendered.
Equally damaging, the trial court concluded that Omni consistently ignored the advice of its legal counsel as well as the Shreveport attorney to the effect that failure to tender its policy limits and accrued interest violated its good faith obligation. Further, Omni specifically misrepresented its policy terms in Mr. LaFoy's correspondence of April 8, 1999, wherein Mr. LaFoy informed Ms. Bellard that "ANY JUDGMENT OVER YOUR POLICY LIMITS OR INTEREST OWED WILL BE YOUR RESPONSIBILITY." Based on these and other factual findings, the trial court concluded that "the failure of Omni Insurance Company to settle, by payment of its policy limits plus the legal interest was arbitrary, capricious and in bad faith, and in total disregard of the interest of its insured, Jessica Bellard." Specifically, the trial court found that Omni misrepresented its policy provisions, in violation of La.R.S. 22:1220(B)(1), in its April 8, 1999 correspondence to Ms. Bellard because it informed her that she would be responsible for the interest owed on any judgment rendered. "The determination that an insurer's handling of a claim is arbitrary and capricious is a factual finding which may not be disturbed unless manifestly erroneous." Calogero v. Safeway Ins. Co. of La., 99-1625, p. 5 (La.1/19/00), 753 So.2d 170, 173. We find that these factual findings are supported by the record, and we conclude that the trial court's factual determinations are not manifestly erroneous or clearly wrong.
*1255 Although La.R.S. 22:1220 was enacted in 1990, Louisiana jurisprudence has long recognized that insurers must act in good faith when called upon to defend their insureds. Specifically, the jurisprudence establishes that "the insurer is the champion of its insured's interests; that the interests of the insured are paramount to those of the insurer, and that the insurer may not gamble with the funds and resources of its policyholders." Cousins v. State Farm Mut. Auto. Ins. Co., 294 So.2d 272, 275 (La.App. 1 Cir.), writ refused, 296 So.2d 837 (La.1974). The court in Domangue v. Henry, 394 So.2d 638, 640 (La. App. 1 Cir.1980), writ denied, 399 So.2d 602 (La.1981), stated:
Louisiana jurisprudence establishes that a duty is placed upon the insurer to consider the interest of the insured as paramount when an offer to settle is made. The insurer has a duty to act in good faith and to deal fairly when handling and settling claims in order to protect the insured from exposure to excess liability.
Additionally, in Lafauci v. Jenkins, 01-2960, pp. 13-14 (La.App. 1 Cir. 1/15/03), 844 So.2d 19, 28-29, the first circuit recently stated:
A liability insurer is the representative of the interests of its insured, and when handling a claim against its insured must carefully consider not only its own self-interest, but also its insured's interest, to protect the insured from exposure to excess liability. Smith v. Audubon Insurance Company, 95-2057, pp. 7-8 (La.9/5/96), 679 So.2d 372, 376. In fulfilling its role as the champion of its insured's interests, a liability insurer owes its insured the duty to act in good faith and to deal fairly in handling claims. Id. In Smith, our Supreme Court articulated the following principles in determining whether a liability insurer has complied with that duty:
[T]he determination of whether the insurer acted in good faith turns on the facts and circumstances of each case. Of course, an insurer is not obligated to compromise litigation just because the claimant offered to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith. The determination of good or bad faith in an insurer's deciding to proceed to trial involves the weighing of such factors, among others, as the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured....
Because the determination of a liability insurer's bad faith failure to settle in excess judgment cases is so fact-intensive, great deference must be accorded to the trier of fact....
Id., 95-2057 at pp. 9-10, 679 So.2d at 377.
Even if a liability insurer is not in bad faith in its evaluation of a claim or in refusing to settle a claim, it may still be found to be in bad faith for failure to keep its insured informed of the status of settlement negotiations and other developments affecting his excess exposure. The failure to do so may expose it to liability to its insured for all or part of any excess judgment, as well as his attorney's fees incurred in protecting himself and in prosecuting his claim for consequential damages against his insurer. See Maryland Casualty Company v. Dixie Insurance Company, 622 So.2d 698, 702-03 (La.App. 1st Cir.1993).
*1256 While Theriot, 694 So.2d 184, limits the specific acts of bad faith to those enumerated in La.R.S. 22:1220(B), we have no difficulty in concluding that Omni breached the duty imposed by La.R.S. 22:1220(B)(1). Misrepresentation can occur when an insurer either makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent facts to the insured. Both occurred in this case. As pointed out by the trial court in its reasons for judgment, Omni misrepresented the terms of its policy by informing Ms. Bellard that she would be responsible for any interest award, even after judgment. Additionally, Omni consistently failed to communicate the status of the claim to Ms. Bellard on a regular basis and, when it did communicate, failed to communicate the pertinent facts necessary for Ms. Bellard to consider in determining what was in her personal interest.
Even assuming, for purposes of argument, that all of the legal advice concerning settlement obtained by Omni was inaccurate, Omni took no steps to communicate to Ms. Bellard that she could be relieved of potential excess liability by simply paying a small amount of interest. In other words, because of Omni's action or inaction, Ms. Bellard was never given the opportunity to mitigate her losses. Omni was clearly in bad faith in handling this claim. It placed its own interests in saving a few dollars of interest ahead of its insured's interest and, in the face of facts overwhelmingly pointing to an excess judgment, ignored the legal advice of its own counsel. We find no merit in Omni's first three assignments of error.
The remaining two assignments of error relate to the correctness of the attorney fee and penalty awards. The penalty provision, La.R.S. 22:1220(C), provides that "[i]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." Omni does not dispute that Ms. Bellard sustained damages in the amount of $25,000.00 plus interest as a result of its actions.
In its fourth assignment of error, Omni argues that La.R.S. 22:1220(C) does not provide for the award of attorney fees and that, therefore, the trial court erred in awarding any amount for attorney fees. Ms. McGee agrees that La.R.S. 22:1220(C) does not specifically provide for attorney fees, but relies on this court's holding in Credeur v. McCullough, 95-1415 (La.App. 3 Cir. 11/20/96), 685 So.2d 300, writ granted and judgment vacated, 96-3081 (La.6/30/97), 696 So.2d 996, judgment reinstated on remand, 95-1415 (La.App. 3 Cir. 10/29/97), 702 So.2d 985, for the proposition that an award of attorney fees is appropriate under the statute. However, the supreme court has held in Calogero, 753 So.2d at 174, that "La.R.S. 22:1220 does not provide for attorney fees." Thus, we find merit in this assignment of error and reverse the award of attorney fees in its entirety.
Omni's final assignment of error addresses the correctness of the trial court's penalty award pursuant to La.R.S. 22:1220(C). As stated in Credeur, 702 So.2d at 987, Omni's behavior "is exactly the type of behavior the legislature meant to dissuade when they enacted La.R.S. 22:1220." Thus, we find no merit in this assignment of error.

DISPOSITION
For the foregoing reasons, we reverse the trial court's award of attorney fees, but affirm the judgment in all other respects.
*1257 We tax all costs equally between Angel Sonnier McGee and Omni Insurance Company.
AFFIRMED IN PART AND REVERSED IN PART.