# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-31064

United States Court of Appeals
Fifth Circuit

**FILED**

September 10, 2014

Lyle W. Cayce
Clerk

DANNY KELLY,

Plaintiff-Appellant

v.

STATE FARM FIRE & CASUALTY COMPANY,

Defendant-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-CV-619

Before HIGGINBOTHAM, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:*

The panel issued an opinion in this case on March 12, 2014. *Kelly v. State Farm Fire & Cas. Co.*, 559 F. App'x 316 (5th Cir. 2014) (unpublished). Plaintiff-Appellant Danny Kelly ("Kelly") and Defendant-Appellee State Farm Fire & Casualty Company ("State Farm") both filed petitions for rehearing. The petitions for rehearing are GRANTED. We withdraw our previous opinion and substitute the following.

Kelly was injured during a car accident caused by one of State Farm's customers, Henry Thomas ("Thomas"). Kelly sued Thomas and obtained an

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31064

adverse judgment against him that was in excess of policy limits.  In return for Kelly's promise not to pursue Thomas individually, Thomas assigned Kelly his right to sue State Farm for acting in bad faith towards Thomas.  Kelly used these assigned rights to assert two bad-faith claims against State Farm, one based on State Farm's failure to notify Thomas of a settlement offer and another based on State Farm's failure to settle Kelly's claims against Thomas. On both counts, the district court granted summary judgment in State Farm's favor.  For the reasons that follow, we certify two determinative questions to the Louisiana Supreme Court.

## FACTUAL AND PROCEDURAL BACKGROUND

In their petitions for reconsideration, Kelly and State Farm do not challenge this court's original statement of the factual and procedural background.  Accordingly, the following factual and procedural background is taken from the original opinion.  *See* 559 F. App'x at 317-18.

On November 21, 2005, a car accident occurred involving Thomas and Kelly.  Thomas and Kelly were driving opposite directions when Thomas initiated a left turn. Thomas hit Kelly while making the left turn.  Kelly and a witness at the scene told police that Thomas failed to yield to oncoming traffic. Thomas maintained that he was not negligent.  Kelly was taken to a hospital by ambulance and was treated for a fractured femur.  His hospital stay lasted approximately six days and cost $26,803.17.

On January 6, 2006, Kelly's attorney mailed a letter to Thomas's insurer, State Farm, regarding Kelly's claim.  The letter included copies of Kelly's hospital records and stated:

> Please find enclosed a copy of Danny Kelly's Medical Summary with attached medical records/reports and bills

2

## No. 12-31064

concerning his hospital treatment for the above referenced incident involving your insured.  I will recommend release of State Farm Insurance Company and your insured, Henry Thomas, Jr., for payment of your policy limits.

Please give me a call in the next ten (10) days to discuss this matter.

The parties dispute, however, when this letter was received.  According to Kelly's certified-mail receipt, the letter was accepted by "G. Johnson" on January 9, 2006.  State Farm maintains that the letter was not received until February 14, 2006.  A State Farm activity log indicates that State Farm received a demand for "policy limits $25,000.00" on February 11, 2006.[1]  It does not appear that State Farm ever responded to the letter.

Kelly's attorney spoke with State Farm representatives on March 8 and March 22.  During the March 22, 2006, conversation, the representative offered to settle the case for $25,000, the policy limit.  The offer was memorialized in a letter dated March 23, 2006.  Kelly's attorney rejected the offer and proceeded to file suit.  On the day that Kelly rejected State Farm's settlement offer, State Farm mailed a letter to Thomas informing him of the possibility of personal liability and suggesting that he consider retaining independent counsel.  State Farm's letter to Thomas did not discuss the letter from Kelly's attorney, State Farm's offer to Kelly, or the extent of Kelly's medical bills.

At trial, Thomas was found liable for the accident and judgment was rendered against him for $176,464.07, plus interest.  State Farm promptly paid Kelly the policy limit.  Under the terms of his policy, Thomas was liable for the remainder of the judgment.  However, Thomas entered into a compromise agreement with Kelly.  Thomas assigned Kelly his right to pursue a bad faith

---

[1] The activity log technically shows "DEMAND REC'D: 2/11/05."  However, since the accident did not occur until November 2005, this is likely a typo.

No. 12-31064

action against State Farm in exchange for Kelly's promise not to enforce the judgment against Thomas's personal assets.

Kelly filed suit against State Farm soon thereafter, alleging two counts of bad faith under Louisiana law. Kelly alleged that State Farm acted in bad faith when it (1) failed to notify Thomas of Kelly's January 2006 letter; and (2) failed to accept Kelly's January 2006 settlement offer. State Farm removed the case to federal court and filed a motion for summary judgment. On November 8, 2011, the district court partially granted State Farm's motion. The district court granted summary judgment in State Farm's favor on Kelly's first argument, holding that the January 2006 letter did not constitute a settlement offer and that State Farm did not have a duty to notify Thomas when the letter was received. The district court denied summary judgment on the second point, however, stating that Kelly might be able to prove that State Farm's failure to settle the claim constituted bad faith.

State Farm moved for reconsideration on November 23, 2011, arguing that State Farm could be liable for bad faith failure to settle only if it failed to accept an actual offer *and* acted in bad faith. According to State Farm's contention, the district court's finding that the January 2006 letter did not constitute an offer necessarily precluded liability on Kelly's second claim. The district court agreed and revised its opinion to grant full summary judgment in State Farm's favor. Judgment was entered accordingly, and Kelly appealed.

## LEGAL STANDARD

When evaluating issues of state law, federal courts "look to the final decisions of that state's highest court." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010). "In the absence of such a decision, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve

4

the issue if presented with the same case." *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009) (internal quotation marks omitted). "In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes." *Id.* "Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana." *Id.* But, once a panel of this court decides an issue of state law by making an *Erie* guess, this court is bound by this decision, unless a subsequent state statute or state court decision has rendered the panel's interpretation "clearly wrong." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462-63 (5th Cir. 2010).

This court, on its own motion, can certify questions to the Supreme Court of Louisiana if there are "questions or propositions of law of [Louisiana] which are determinative of said cause independently of any other questions involved in said case and [ ] there are no clear controlling precedents in the decisions of the supreme court of this state." Sup. Ct. of La. Rule XII, §§ 1-2. "[C]ertification is not a proper avenue to change our binding precedent" on issues of state law, even when the parties challenge a previous panel's *Erie* guess. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 425-26 (5th Cir. 2001) (internal quotation marks omitted). But "certification may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed." *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (internal quotation marks omitted).

No. 12-31064

**DISCUSSION**

In his petition for rehearing, Kelly explicitly disclaims any reliance on Louisiana Revised Statutes §§ 22:1892 and 22:1973(B)(5).[2] He also emphasizes that he is only pursuing Thomas's claims against State Farm. Thus, we only consider Thomas's claims under Section 22:1973(A) and (B)(1).

This court has identified two determinative questions of Louisiana law on which there are no controlling precedents from the Supreme Court of Louisiana. Neither party has asked this court to certify these questions to the Supreme Court of Louisiana. But this court can certify questions to the Supreme Court of Louisiana *sua sponte*. Sup. Ct. of La. Rule XII, § 2; *see also Katrina Canal*, 613 F.3d at 509 (certifying question to Supreme Court of Louisiana, even though no party requested it). For the reasons given below, we find it prudent to certify two questions.

A. Section 22:1973(A) Claim

Section 22:1973(A) provides, in relevant part, "An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." Despite the broad wording of Section 22:1973(A), it does not give a third-party claimant the right to sue an insurer for a generalized breach of its duty of good faith and fair dealing. *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 188-93 (La. 1997). Instead, a third-party claimant can only recover against an insurer that has taken one or more of the prohibited actions specified in Section 22:1973(B). *Id.*; *see also* § 22:1973(B) ("Any one of the following acts, if knowingly committed

---

[2] All subsequent references to statutory sections refer to the Louisiana Revised Statutes.

6

or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section: . . . .").

In *Stanley v. Trinchard*, this court held that, in contrast to a third-party claimant, an insured can maintain a cause of action against an insurer for a generalized breach of the duty of good faith and fair dealing, even if the insurer's conduct did not violate Section 22:1973(B). 500 F.3d 411, 427-28 (5th Cir. 2007). Two Louisiana intermediate appellate court cases have found the opposite, holding that an insured can only bring claims against an insurer that violated Section 22:1973(B). *Arvie v. Safeway Ins. Co. of La.*, 951 So. 2d 1284, 1285 (La. App. 3 Cir. 2007); *McGee v. Omni Ins. Co.*, 840 So. 2d 1248, 1253-56 (La. App. 3 Cir. 2003). But both of these Louisiana intermediate appellate court cases antedated *Stanley*, and there have been no other new state law developments since *Stanley*. Thus, because this court's precedent on this matter is clear, we must assume that an insured can pursue a cause of action against an insurer for a generalized breach of the duty of good faith and fair dealing.[3]

Before Section 22:1973(A) was enacted, this court held that an insurer could be found liable for a bad-faith failure-to-settle claim only if the insurer had received a firm settlement offer from a claimant. *Commercial Union Ins. Co. v. Mission Ins. Co.*, 835 F.2d 587, 588 & n.2 (5th Cir. 1988). No Louisiana court has ever cited this case or stated this proposition. Moreover, *Commercial Union*'s holding has been seriously undermined by the subsequent enactment of Section 22:1973(A), which provides that "[t]he insurer has an *affirmative duty* . . . to *make a reasonable effort* to settle claims with the insured or the

---

[3] Of course, the Supreme Court of Louisiana may correct this or any other assumption that it finds to be erroneous.

claimant, or both" (emphasis added).[4]   Section 22:1973(A)'s imposition of an affirmative duty to make a reasonable effort to settle claims suggests that insurers must do more than simply rest on their laurels and wait for claimants to submit firm settlement offers.   Particularly given Louisiana's civilian methodology, which treats jurisprudence as secondary to statutes, *Six Flags*, 565 F.3d at 954, this statutory enactment casts serious doubt on our prior jurisprudence on this issue.

Again, the Supreme Court of Louisiana and the Louisiana intermediate appellate courts have never held that a firm settlement offer is required for a bad-faith failure-to-settle claim.   But Kelly has not directed us to any Louisiana cases that find an insurer liable for bad-faith failure-to-settle in the absence of a firm settlement offer.   The resolution of this issue is thus unclear under both Louisiana law and our own precedent.   Moreover, this issue is determinative.   Kelly's petition for rehearing does not claim that he made a binding settlement offer, and therefore Kelly will lose if he must show that he made such an offer.   Thus, we will certify this question to the Supreme Court of Louisiana.

B. Section 22:1973(B)(1) Claim

Section 22:1973(B)(1) provides that an insurer breaches its duties if it "[m]isrepresent[s] pertinent facts or insurance policy provisions relating to any coverages at issue."   Some Louisiana intermediate court decisions have held

---

[4] State Farm's citation to *Brown ex rel Tracy v. Liberty Mutual Fire Insurance Co.*, 168 F. App'x 558 (5th Cir. 2006) (unpublished), to establish the continued viability of *Commercial Union* is unpersuasive. *Brown* cited *Commercial Union* only with respect to a claim under the predecessor to Section 22:1892, which, unlike Section 22:1973(A), does not impose on insurers an affirmative duty to settle. Thus, *Brown* did not deal with the issue of whether *Commercial Union* is abrogated by statute in the Section 22:1973(A) context.

that an insurer can only be found liable under Section 22:1973(B)(1) if the insurer misrepresents the coverage provided by the insurance policy. *Talton v. USAA Cas. Ins. Co.*, 981 So. 2d 696, 709-10 (La. App. 4 Cir. 2008) (finding no (B)(1) misrepresentation where insurer "was in regular and continuous contact with the appellants and did not misrepresent any fact related to coverage"); *Strong v. Farm Bureau Ins. Co.*, 743 So. 2d 949, 953 (La. App. 2 Cir. 1999) (finding no (B)(1) misrepresentation where the only fact misrepresented to third-party claimant was that insured had a green left-turn arrow rather than a green light, which was a liability-related rather than a coverage-related fact). But two Louisiana intermediate appellate cases have held that an insurer can be found liable for non-coverage-related misrepresentations or nondisclosures. *Arvie*, 951 So. 2d at 1286 (finding a (B)(1) misrepresentation based on insurer's failure to communicate the extent of the claimant's injuries or the status of potential settlement); *McGee*, 840 So. 2d at 1256 (finding a (B)(1) misrepresentation based in part on insurer's failure to communicate status of claims). Thus, the Louisiana intermediate appellate courts conflict on this question.

This court has never made a direct holding on this issue. In *Versai*, we suggested in dicta that Section 22:1973(B)(1) only applies to misrepresentations about coverage-related facts. *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739-40 (5th Cir. 2010).[5] This suggestion was unnecessary to the resolution of *Versai*. The alleged misrepresentation there clearly involved a coverage-related fact: the availability of code upgrade

---

[5] The court went on to explain that such a claim would have to involve misrepresentations about "facts about the policy itself, such as the amount of coverage, lapse or expiration of the policy, or exclusions from coverage." *Versai*, 597 F.3d at 739-40 (quoting *Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, Civ. No. 06-4262, 2009 WL 2356290, at *3 (E.D. La. July 27, 2009) (quoting *Strong*, 743 So.2d at 953)).

coverage.  *Id.*  Further, *Versai*'s dicta did not analyze the split among the Louisiana intermediate appellate courts.  *Id.*  Instead, the court relied on a district court case, *Imperial Trading Co.*, which analyzed the plain text of Section 22:1973(B)(1) and quoted *Strong*, 743 So. 2d 949, but failed to mention that other Louisiana intermediate appellate courts have interpreted this text differently.  2009 WL 2356290, at \*2.  Moreover, directly before we stated this dicta in *Versai*, we cited *McGee*.  *Versai*, 597 F.3d at 740.  *McGee* held that the insurer breached its duty under Section 22:1973(B)(1) by failing to communicate the status of a claim, 840 So.2d at 1256, which was clearly not a coverage-related misrepresentation.  Thus, if we apply *McGee*, Kelly should almost certainly win.  As in *McGee*, Kelly's primary complaint under Section 22:1973(B)(1) is that State Farm failed to communicate the status of Kelly's claim and settlement negotiations to Thomas.  *Versai* therefore cuts in two opposing directions in this case; *Versai*'s reliance on *McGee* indicates that Kelly should win, but *Versai*'s dicta suggests that Kelly should lose.  Given this confusion in Louisiana case law, as well as in *Versai* itself, we find it prudent to certify this question, as well.

## C. Decision to Certify Questions

As discussed in detail above, the Supreme Court of Louisiana has not yet passed on either of the above questions, and their answers are by no means clear.  The resolution of these issues will determine the outcome of this case.  Thus, Louisiana's requirements for certification are met.  Sup. Ct. of La. Rule XII, §§ 1-2.  Our precedent does not directly answer either of the questions, and the State of Louisiana has a strong interest in ensuring the proper application of its insurer liability statute.  Section 22:1973 clearly strikes a balance between Louisiana's need to hold insurers accountable for certain misconduct

and Louisiana's competing need to attract insurance companies to the state. The Supreme Court of Louisiana is uniquely well-suited to strike this balance appropriately.  Thus, we certify the two questions to that court.  *See Katrina Canal*, 613 F.3d at 509 (holding that it is proper to certify uncertain issues that are important to state law).

## QUESTIONS CERTIFIED

We certify the following questions to the Supreme Court of Louisiana:

(1) Can an insurer be found liable for a bad-faith failure-to-settle claim under Section 22:1973(A) when the insurer never received a firm settlement offer?

(2) Can an insurer be found liable under Section 22:1973(B)(1) for misrepresenting or failing to disclose facts that are not related to the insurance policy's coverage?

## CONCLUSION

We disclaim any intent that the Supreme Court of Louisiana confine its reply to the precise form or scope of the legal question we certify.  We transfer to the Supreme Court of Louisiana the record and appellate briefs with our certification.  This panel retains cognizance of this appeal pending response from the Supreme Court of Louisiana.

We CERTIFY the questions stated to the Louisiana Supreme Court.