IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-10541

Summary Calendar
_____


RANDALL K HAMILTON,

                              Plaintiff - Appellant

        v.

SEGUE SOFTWARE INC; STEVE BUTLER,

                              Defendants - Appellees

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

November 20, 2000

Before KING, Chief Judge, and SMITH and PARKER, Circuit Judges.

PER CURIAM:

        Plaintiff-Appellant Randall Hamilton appeals the district

court's grant of summary judgment in favor of Defendants-

Appellees, Segue Software, Inc. and Steve Butler, President and

Chief Executive Officer of Segue Software, Inc.  For the

following reasons, we AFFIRM.

# I. FACTS AND PROCEDURAL BACKGROUND

In 1999, while employed as a Product Marketing Manager at AutoTester, Inc., Randall Hamilton was recruited to work at Segue Software, Inc. ("Segue"). Steve Butler, President and CEO of Segue, offered Hamilton the position of Director of Enterprise Resource Planning (ERP) Initiatives at the company. The offer was formalized in an offer letter dated February 24, 1999 and signed by Butler.

The offer letter included three paragraphs relevant to our disposition of this case. First, the letter contained language stating, "Your base salary will be at an annual rate of $125,000.00 paid semi-monthly. Upon mutually agreed upon objectives, you will be eligible for an annual 20K MBO [bonus]." Second, the letter stated, "A copy of Segue's standard Employment Agreement is enclosed. Please sign this agreement and return it with this letter." Finally, the letter stated, "To accept this offer, please sign the enclosed copy of this letter and the Employment Agreement and return both to Human Resources . . . ."

Hamilton signed and returned the letter, accepting the position. However, there was no Employment Agreement attached. Hamilton did not receive or sign an "Employee Agreement"[1] until

---

[1] We accept the district court's finding that the discrepancy between the "Employment Agreement" mentioned in the letter and the "Employee Agreement" signed by Hamilton is irrelevant. For consistency, we will refer to both agreements as an "Employment Agreement."

July 13, 1999.  This document was a standard form employment contract setting forth the terms and conditions for employment at Segue, including, <u>inter alia</u>, rules governing conflicts of interest, confidentiality, and intellectual property rights. Paragraph seven of the signed Employment Agreement also included the language, "I understand that, unless expressly provided otherwise in any other written agreement signed by me an [sic] the Company by the Executive Vice President or CEO, my employment with the Company is 'at will' and that my employment may be terminated by the Company at will at any time with or without cause or notice."

Hamilton began working at Segue on March 15, 1999 as Director of ERP Initiatives.  In this capacity, he traveled on behalf of Segue to meet with clients and was paid according to the figure in the offer letter.  On July 1, 1999, Hamilton was transferred to a new position as a member of Segue's Business Development team.  On August 20, 1999, Segue terminated Hamilton's employment altogether.

Hamilton brought suit for breach of contract and fraud in the inducement in Texas state court.  The suit was removed to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. §§ 1332 and 1441.  To support his breach of contract claim, Hamilton asserts that the language in the offer letter established a one-year contract under Texas law and that

3

Segue and Butler breached this employment agreement by firing him.

To support his fraud in the inducement claim, Hamilton asserts that Butler and Segue fraudulently induced him to join the company by promising him the Director of ERP Initiatives position, without any intent to keep him in that position. Hamilton also alleges that prior to and during his employment, Segue perpetrated an accounting fraud that resulted in a restatement of Segue's 1998 financial statement. This fraud precipitated the filing of a shareholder class action lawsuit and is claimed to have weakened the financial condition of the company. Hamilton argues that this fraud was concealed from him and would have altered his decision to join the company.

In federal district court, Segue and Butler moved to dismiss Hamilton's suit. The district court converted the Motion to Dismiss into a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(b) and directed the parties to submit summary judgment evidence. On May 11, 2000, the district court granted Defendants' Motion for Summary Judgment. Hamilton timely appeals.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same criteria used by the district court in the first instance.

See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with "significant probative evidence" that there exists a genuine issue of material fact. See Conkling, 18 F.3d at 1295. A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

## III. BREACH OF CONTRACT CLAIM

The gravamen of Hamilton's breach of contract complaint is that the February 24, 1999 offer letter and his acceptance created a binding contract of one-year employment. The letter stated in relevant part, "Your base salary will be at an annual rate of $125,000.00 paid semi-monthly. Upon mutually agreed upon

5

objectives, you will be eligible for an annual 20K MBO." This case turns on whether, under Texas law, the "annual rate of $125,000.00" language in the offer letter creates a definite contract of employment for a one-year period. As our jurisdiction in this case is based on diversity of citizenship, we therefore function as an <u>Erie</u> court and must, to the best of our ability, apply Texas law as we think a Texas court would. <u>See</u> <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938).

The district court interpreted the contractual relationship by reading the offer letter and the Employment Agreement together. It found that the offer was conditioned on Hamilton's signing of the Employment Agreement, which expressly termed Hamilton's employment "at will". The court reasoned that because the offer letter stated that an Employment Agreement was attached, the at-will terms in that agreement were "expressly incorporated" in the offer. Our difficulty with the district court's reasoning, however, is that the Employment Agreement was not signed until five months after the offer letter.[2] While the district court dismissed this time difference as insignificant, we are not so persuaded.[3] Nevertheless, we affirm the district

_____

[2] We take as true Hamilton's assertion that he did not receive or sign the Employment Agreement until July 1999.

[3] Our concern is that under Texas law, an employee's success in a wrongful termination/breach of contract suit can depend on whether he or she was hired as a term employee or an at-will employee. This determination of initial status is the dispositive question because we cannot evaluate the effect of a

6

court on the ground that the offer letter language, alone, fails to limit in a "meaningful and special way" the employer's right to terminate at will.

"The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary." Ronnie Loper Cheverolet-Geo, Inc. v. Haqey, 999 S.W.2d 81, 83 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998)). "To rebut the presumption of employment at will, an employment contract must directly limit in a 'meaningful and special way' the employer's right to terminate the employee without cause." Rios v. Texas Commerce Bancshares, Inc., 930 S.W.2d 809, 815 (Tex. App.—Corpus Christi 1996, writ denied) (quoting Massey v.

_____

subsequently signed employment agreement without knowing the initial status of the employee. For example, if the employee demonstrates that a written offer letter created a binding contract for a specific term of employment, then he is not an at-will employee and can only be fired for cause. See Lee-Wright, Inc. v. Hall, 840 S.W.2d 572, 578 (Tex. App.—Houston [1st Dist.] 1992, no writ). A subsequent signing of an Employment Agreement which includes an at-will clause will not necessarily change this term employment into an at-will agreement. See Dallas Hotel Co. v. Lackey, 203 S.W.2d 557, 561 (Tex. Civ. App.—Dallas, 1947, writ ref'd). Specifically, conflicting provisions in a form employment agreement, like the one at issue here, may have to yield to the expression of intent in the initial agreement. See id. As we decide this issue on the antecedent question of whether the offer letter itself created a binding contract, we need not resolve the effect of Hamilton's signing of the Employment Agreement.

Houston Baptist Univ., 902 S.W.2d 81, 83 (Tex. App.—Houston [1st Dist.] 1995, writ denied)).

Hamilton argues that the language in the offer letter limits his employer's right to terminate him at will.  He argues this "annual rate" language fits within the long-established "English Rule"[4] adopted by Texas courts.  The English Rule provides that "a hiring at a stated sum per week, month or year, is a definite employment for the period named."  Dallas Hotel Co. v. Lackey, 203 S.W.2d 557, 561 (Tex. Civ. App.—Dallas 1947, writ ref'd); see also Winogard v. Willis, 789 S.W.2d 307, 310 (Tex. App.—Houston [14th Dist.] 1990, writ denied) ("A hiring based upon an agreement of an annual salary limits in a 'meaningful and special way' the employer's prerogative to discharge the employee during the dictated period of employment.").  Offering the "annual rate" language as evidence of "a hiring based on an agreement of an annual salary," Hamilton argues he has met his burden for summary judgment.

The difficulty in resolving this question is that a conflict exists in Texas law over whether a written job offer proposing an annual salary constitutes a binding one-year employment contract. Specifically, a conflict exists over the status of the English

---

[4]  For the history of this doctrine and its development in the United States, see Bernard v. IMI Systems Inc., 618 A.2d 338, 341-44 (N.J. 1993).

8

Rule as it relates to the presumption of at-will employment, that can only be overcome with specific terms.[5]

Two cases frame our analysis in deciding this matter. First, <u>Dallas Hotel Co. v. Lackey</u>, provides an analogous factual situation whereby an employee accepted a written offer letter stating an annual salary and then upon commencing work was required to sign an employment agreement, including an "at-will clause." 203 S.W.2d 557, 561 (Tex. Civ. App.—Dallas, 1947, writ ref'd). The <u>Lackey</u> court, following the English Rule, found that the initial letter controlled, and that the subsequent employment agreement could not alter the already agreed to term employment. <u>See id.</u>

In contrast, the Texas Supreme Court in a recent employment decision reaffirmed the presumption of at-will employment in Texas, requiring employees to demonstrate an "unequivocal" intent of non-at-will status in their contracts. <u>See</u> <u>Montgomery County Hosp. Dist. v. Brown</u>, 965 S.W.2d 501, 502 (Tex. 1998). The <u>Montgomery</u> court held that, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." 965 S.W.2d at 502. The <u>Montgomery</u> holding reflects the general

_____

[5] <u>See</u> <u>Stone v. Jo-Ann Stores, Inc.</u>, 109 F. Supp. 2d 752, 755 (N.D. Ohio 2000) (acknowledging in a diversity case interpreting Texas employment law, "The English Rule is in conflict with the more broadly stated <u>Montgomery</u> holding that, for a binding employment contract to exist, an employer must express an 'unequivocal intent to be bound not to terminate.'").

understanding that at-will employment can only be altered by express provisions. See Byars v. City of Austin, 910 S.W.2d 520, 523 (Tex. App.—Austin 1995, writ denied) ("Any modification of at-will employment status must be based on express rather than implied agreements.").

Because there is no Texas Supreme Court ruling precisely on point, we must make an Erie guess regarding Texas law on this subject. As we stated in United States v. Johnson, 160 F.3d 1061, 1063 (5th Cir. 1998), "[i]n the absence of Texas Supreme Court pronouncements, we generally defer to the holdings of lesser state courts unless we are convinced by other evidence that the state law is otherwise." In this instance, we are guided by what appears to be the direction of Texas courts in addressing this conflict.

While we are cognizant of the factual similarity of the Lackey case to Hamilton's claim, we are bound to follow the more recent holding interpreting the Montgomery decision. In this task, we are guided by a recent Texas court of appeals decision, Saucedo v. Rheem Mfg. Co., which squarely addressed this conflict and resolved it in favor of the at-will presumption. 974 S.W.2d 117, 127 (Tex. App.—San Antonio 1998, pet. denied).[6] As was

---

[6] In addition to Saucedo, we also take note of several unpublished Texas cases, which are not controlling authority but do serve to support our reading of Montgomery. See Kooken v. The Leather Center, Inc., 2000 WL 381926 (Tex. App.—Dallas 2000); College v. Marshall, 2000 WL 31863 (Tex. App.—Dallas 2000); Wegner v. Dell Computer Corp., 1999 WL 654086 (Tex. App.—Austin

10

recognized in the Saucedo dissent, "[T]here is an apparent inconsistency between the English Rule's implied agreement to limit an employer's right to terminate and the supreme court's insistence that such an agreement be specific." Id. at 127 (Green, J., dissenting). The relevant issue in Saucedo was whether a written memorandum, confirming an oral offer which stated that the employee was to be paid a base salary of "$36,000 annually" constituted employment for a term of one year.

The majority of the Saucedo panel initially followed the English Rule, finding "that a hiring based upon an agreement of an annual salary limits in a meaningful and special way the employer's prerogative to discharge the employee during the dictated period of employment." 974 S.W.2d at 125. In dissent, Judge Green recognized the conflict of the English Rule with the more modern at-will presumption sanctioned by the Texas courts and concluded that the latter principle should control.[7]

On a petition for rehearing, the Saucedo court reversed itself. Finding that the Texas Supreme Court's recent decision

_____

1999).

[7] See Saucedo, 974 S.W.2d at 127 (Green, J., dissenting) ("Nothing in the memorandum of employment indicates that the language "Base salary of $36,000 annually" was intended by [the employer] to evince an agreement that Saucedo was to have a one-year term of employment. At best, the language is equivocal and fails to satisfy Saucedo's burden to overcome the at-will presumption.").

11

in Montgomery controlled its analysis,[8] the court concluded that the written confirmation, including the "$36,000 annually," was too indefinite to create a one-year contract.  See Saucedo, 974 S.W.2d at 128.  The Saucedo rehearing decision lends support to the dissent's questioning of the continued viability of the English Rule.  While we make no determination on the validity of the English Rule in Texas courts, our interpretation of Texas law is also shaped by the Montgomery decision.

In the instant case, Hamilton's offer letter provided nothing unequivocal nor definite about the length of employment at Segue.  The "$36,000 annually" language in Saucedo and the language promising Hamilton a "base salary [] at an annual rate of $125,000.00" are similarly indefinite.  In practical terms, this statement of an annualized base salary does not provide a guarantee of employment, but merely provides a benchmark to evaluate one's pay.  See Stone v. Jo-Ann Stores, Inc., 109 F. Supp. 2d 752, 755 (N.D. Ohio 2000) (interpreting Texas law).  Like the Saucedo court, we are unpersuaded that such language unequivocally conveys the intent of an employer to be bound to a one-year contract.

"The mere fact that an employment contract is in writing,... is insufficient to rebut the presumption of employment at-will; an employment contract must directly limit in a meaningful and

_____

[8]    The Montgomery opinion was decided the same week as the initial Saucedo decision.

12

special way the employer's right to terminate the employee without cause." Massey, 902 S.W.2d at 83. As the written offer letter provided nothing that limited Segue's right to terminate, the general presumption of at-will employment must prevail. Following the Saucedo court's reasoning, and making our Erie guess, we therefore affirm the district court's denial of summary judgment on the breach of contract claim.

## IV. FRAUD IN THE INDUCEMENT

Hamilton asserts two separate fraud in the inducement claims against Segue and Butler. First, he argues that the Segue company never intended for him to remain as Director of ERP Initiatives and thus misled him as to his employment position. Second, Hamilton argues that the failure of Segue or Butler to inform him of the alleged accounting fraud misrepresented the fiscal health of the company and prevented him from making an informed decision to leave his previous employer. The district court denied Hamilton's fraud claims, finding that there were no misrepresentations made upon which Hamilton relied to his detriment. We agree. We also hold that Segue and Butler did not fraudulently conceal the alleged accounting fraud because, under Texas law, the company was under no duty to reveal the alleged fraud to its prospective employees.

Under Texas law, a plaintiff establishes a fraudulent inducement claim by showing the elements of a simple fraud claim. See Balogh v. Ramos, 978 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1998, pet. denied) ("The supreme court has defined fraudulent inducement as a simple fraud claim."). "The elements of fraud and fraudulent inducement applicable here, are (1) a material representation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury." Id.

We agree with the district court that Hamilton has offered no summary judgment evidence to demonstrate that the offering of the Director of ERP Initiatives position was a misrepresentation. From the record, Segue through Butler represented to Hamilton that he would be the Director of ERP Initiatives, and Hamilton was, in fact, given that position. Initially, and for several months, Hamilton held the Director of ERP Initiatives title. He was paid according to this position and traveled on behalf of Segue in that capacity. While Hamilton was later transferred from his position, this modification of title or position does not rise to the level of fraud. Therefore, we agree with the district court that Hamilton has failed to raise an issue of material fact sufficient to survive summary judgment.

We also agree with the district court that Hamilton has failed to demonstrate a factual issue arising from the alleged

14

accounting fraud.  The record is devoid of any representation or misrepresentation by Segue or Butler about the issue.  Because Hamilton cannot demonstrate that he relied on a material misrepresentation, the district court did not err in granting summary judgment on this issue.

Hamilton is correct, however, that fraudulent misrepresentation is also cognizable under a fraudulent concealment analysis.[9]  See Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997) ("Fraud by non-disclosure is simply a subcategory of fraud.").  Hamilton argues that the failure of Segue and Butler to inform him of the accounting problems demonstrates fraudulent concealment of a material fact and thus creates the misrepresentation necessary for his fraudulent inducement claim to go forward.  We disagree.

"For there to be an actionable nondisclosure fraud, there must be a duty to disclose."  Bradford v. Vento, 997 S.W.2d 713, 725 (Tex. App.—Corpus Christi 1999, pet. granted); see also Amouri v. Southwest Toyota, Inc., 20 S.W.3d 165, 170 (Tex. App.—Texarkana 2000, pet. denied) ("Silence is equivalent to a

---

[9]   While the district court did not analyze "fraudulent concealment," the district court's discussion of whether there was a breach of the duty of "good faith and fair dealing" encompasses the underlying issue of whether Segue or Butler had a duty to disclose the fraud.  Under both analyses, there must be a special relationship that creates a duty to disclose.  This special relationship does not exist in the employer-employee context.  See City of Midland v. O'Bryant, 18 S.W.3d 209, 215 (Tex. 2000).

15

false representation where circumstances impose a duty to speak and one deliberately remains silent."). Therefore, Hamilton must demonstrate that Segue or Butler breached a duty owed to him in order to prevail.

Whether such a duty to disclose exists in this case is "entirely a question of law." See Bradford, 997 S.W.2d at 725 (quoting Hoggett v. Brown, 971 S.W.2d 472, 487-88 (Tex. App.—Houston [14th Dist.] 1997, no writ)). Texas courts have found that "a duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; (4) when one makes a partial disclosure and conveys a false impression." Id.

None of the above situations is present in the instant case. Segue/Butler and Hamilton were not in a fiduciary relationship, and as stated, nothing at all was disclosed to Hamilton. We note that the district court's analysis of the duty owed by an employer to an employee supports our finding. The district court correctly held that in Texas there is no special relationship in the employment context that would create an obligation for employers to inform potential employees about an issue like the accounting fraud. The Texas Supreme Court has recently found that "there is no cause of action in Texas based on a duty of

16

good faith and fair dealing in the context of an employer/employee relationship."  See City of Midland v. O'Bryant, 18 S.W.3d 209, 211 (Tex. 2000).  Thus, the special relationship necessary to infer a duty to disclose is lacking between Segue and Hamilton.  We therefore affirm the district court's grant of summary judgment.

## V. CONCLUSION

For the above stated reasons, we AFFIRM.

17