# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 12, 2014

Lyle W. Cayce
Clerk

No. 12-31064

DANNY KELLY,

Plaintiff–Appellant

v.

STATE FARM FIRE & CASUALTY COMPANY,

Defendant–Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-CV-619

Before HIGGINBOTHAM, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Danny Kelly ("Kelly") sued State Farm Fire & Casualty Company ("State Farm" or "insurer") on behalf of Henry Thomas ("Thomas"), one of State Farm's insured customers. Kelly asserted two bad-faith claims arising out of a car accident that occurred on November 21, 2005. Kelly alleged that State Farm failed to notify Thomas of a settlement offer and failed to settle Kelly's claim against Thomas. The district court granted summary

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31064

judgment in State Farm's favor on both counts.  For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

**I**

On November 21, 2005, a car accident occurred involving Thomas and Kelly.  Thomas and Kelly were driving opposite directions when Thomas initiated a left turn.  Thomas hit Kelly while making the left turn.  Kelly and a witness at the scene told police that Thomas failed to yield to oncoming traffic.  Thomas maintained that he was not negligent.  Kelly was taken to a hospital by ambulance and was treated for a fractured femur.  His hospital stay lasted approximately six days and cost $26,803.17.

On January 6, 2006, Kelly's attorney mailed a letter to Thomas's insurer, State Farm, regarding Kelly's claim.  The letter included copies of Kelly's hospital records and stated:

> Please find enclosed a copy of Danny Kelly's Medical Summary with attached medical records/reports and bills concerning his hospital treatment for the above referenced incident involving your insured.  I will recommend release of State Farm Insurance Company and your insured, Henry Thomas, Jr., for payment of your policy limits.
>
> Please give me a call in the next ten (10) days to discuss this matter.

The parties dispute, however, when this letter was received.  According to Kelly's certified-mail receipt, the letter was accepted by "G. Johnson" on January 9, 2006.  State Farm maintains that the letter was not received until February 14, 2006.  A State Farm activity log indicates that State Farm received a demand for "policy limits $25,000.00" on February 11, 2006.[1]  It does not appear that State Farm ever responded to the letter.

---

[1] The activity log technically shows "DEMAND REC'D: 2/11/05."  However, since the accident did not occur until November 2005, this is likely a typo.

No. 12-31064

Kelly's attorney spoke with State Farm representatives on March 8 and March 22. During the March 22, 2006 conversation, the representative offered to settle the case for $25,000, the policy limit. The offer was memorialized in a letter dated March 23, 2006. Kelly's attorney rejected the offer and proceeded to file suit. On the day that Kelly rejected State Farm's settlement offer, State Farm mailed a letter to Thomas informing him of the possibility of personal liability and suggesting that he consider retaining independent counsel. State Farm's letter to Thomas did not discuss the letter from Kelly's attorney, State Farm's offer to Kelly, or the extent of Kelly's medical bills.

At trial, Thomas was found liable for the accident and judgment was rendered against him for $176,464.07, plus interest. State Farm promptly paid Kelly the policy limit. Under the terms of his policy, Thomas was liable for the remainder of the judgment. However, Thomas entered into a compromise agreement with Kelly. Thomas assigned Kelly his right to pursue a bad faith action against State Farm in exchange for Kelly's promise not to enforce the judgment against Thomas's personal assets.

Kelly filed suit against State Farm soon thereafter, alleging two counts of bad faith under Louisiana law. Kelly alleged that State Farm acted in bad faith when it (1) failed to notify Thomas of Kelly's January 2006 letter; and (2) failed to accept Kelly's January 2006 settlement offer. State Farm removed the case to federal court and filed a motion for summary judgment. On November 8, 2011, the district court partially granted State Farm's motion. The district court granted summary judgment in State Farm's favor on Kelly's first argument, holding that the January 2006 letter did not constitute a settlement offer and that State Farm did not have a duty to notify Thomas when the letter was received. The district court denied summary judgment on the second point, however, stating that Kelly might be able to prove that State Farm's failure to settle the claim constituted bad faith.

No. 12-31064

State Farm moved for reconsideration on November 23, 2011, arguing that State Farm could be liable for bad faith failure to settle only if it failed to accept an actual offer <u>and</u> acted in bad faith. According to State Farm's contention, the district court's finding that the January 2006 letter did not constitute an offer necessarily precluded liability on Kelly's second claim. The district court agreed and revised its opinion to grant full summary judgment in State Farm's favor. Judgment was entered accordingly, and Kelly appealed.

## II

We review the district court's grant of summary judgment de novo. *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party has shown it is entitled to judgment as a matter of law. *Id.* A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact issue is "material" if its resolution could affect the outcome of the action. *Id.* We construe all facts and all reasonable inferences in the light most favorable to the non-moving party. *McFaul*, 684 F.3d at 571.

When evaluating issues of state law, federal courts "look to the final decisions of that state's highest court." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010). "In the absence of such a decision, '[federal courts] must make an *Erie* guess and determine, in [their] best judgment, how [the supreme court of that state] would resolve the issue if presented with the same case.'" *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)). "In making an *Erie* guess, [federal courts] defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Mem'l Hermann*

No. 12-31064

*Healthcare Sys. Inc. v. Eurocopter Deutschland GMBH*, 524 F.3d 676, 678 (5th Cir. 2008) (internal quotation marks omitted).

## III

The parties' briefs and the district court's orders at times seem to conflate the various causes of action and concomitant legal standards relevant to this lawsuit. This conflation stems in large part from confusion over Kelly's position as a party in this case. Kelly's lawsuit is premised on the assignment of rights he received in his settlement agreement with Thomas. In the settlement agreement, Thomas assigned to Kelly his right to pursue bad faith claims against State Farm in exchange for Kelly's promise not to pursue Thomas's personal assets in satisfaction of the judgment. When rights are assigned by contract, the assignee—here, Kelly—stands in the shoes of the assignor—here, Thomas.[2] *See N.S.Q. Assocs. v. Beychok*, 94-2760, p. 9 (La. 9/5/95), 659 So.2d 729, 734 (noting "the general concept that an assignee usually stands in the shoes of his or her assignor"). Thus, whereas Kelly was a third-party claimant vis-à-vis State Farm in the parties' earlier lawsuit—as well as during all pre-suit interactions—he stands in Thomas's shoes as the insured in his capacity as plaintiff here. Therefore, any cause of action Kelly claims here must be available to the insured. Kelly is not asserting a third-party claimant's claims. In fact, he specifically disclaims any third-party claims in his brief. With this in mind, there appear to be two possible bases for Kelly's bad-faith claims against State Farm: Louisiana Revised Statutes § 22:1892 and § 22:1973. We review each in turn.

---

[2] The Louisiana Supreme Court has affirmed that individuals may assign their contract rights in the insurance context. *See In re Katrina Canal Breaches Litig.*, 2010-1823, p. 11 (La. 5/10/11), 63 So. 3d 955, 962 (stating that, in the insurance context, "the Louisiana legislature has clearly indicated an intent to allow parties freedom to assign contractual rights").

No. 12-31064

## A

Section 22:1892 establishes rules governing the relationship between insurers, their insured, and third-party claimants in a variety of circumstances. La. Rev. Stat. § 22:1892. For purposes of this suit, two provisions are potentially relevant: §§ 22:1892(A)(1) and (2). Subsection (A)(1) states that all insurers "shall pay the amount of any claim <u>due any insured</u> within thirty days after receipt of satisfactory proofs of loss <u>from the insured</u> or any party in interest." *Id.* § 22:1892(A)(1) (emphasis added). Section (A)(2) states that insurers "shall pay . . . any reasonable medical expenses claim due any bona fide third party claimant within thirty days <u>after written agreement of settlement</u> of the claim <u>from any third party claimant</u>." *Id.* § 22:1892(A)(2) (emphasis added).[3] As explained below, Kelly does not have a claim under either provision of § 22:1892 because the facts of this case do not fall within the statutory language.

Subsection (A)(1) contemplates a cause of action only when the insurer fails to pay a claim based on a satisfactory proof of loss received <u>from the insured</u>. *Id.* § 22:1892(A)(1). While Kelly stands in Thomas's shoes as the insured for purposes of this suit, Kelly's allegations focus on State Farm's failure to pay a claim based on a proof of loss submitted by Kelly as a third-party claimant. Specifically, Kelly argues State Farm failed to settle his third-party claim after he submitted a purported settlement letter and medical receipts in January 2006. These documents do not fall within the statute's language. The assignment between Kelly and Thomas provided Kelly with the ability to make Thomas's bad-faith claims on his behalf; the assignment does not allow Kelly to shoehorn his third-party claims into § 22:1892(A)(1). Kelly has not alleged that Thomas submitted a proof of loss to State Farm or that State Farm failed to pay Thomas based on a proof of loss. Because Kelly's purported settlement letter

---

[3] The parties do not dispute that the thirty-day period was not met here.

and medical receipts did not constitute "a satisfactory proof of loss from the insured," Kelly cannot maintain a claim under § 22:1892(A)(1) as a matter of law. *Id.* Therefore, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

Kelly cannot maintain a claim under subjection (A)(2) either, for two reasons. First, Kelly has expressly disavowed any third-party claims in this suit, and subsection (A)(2) only pertains to such claims. *See* La. Rev. Stat. § 22:1892(A)(2). Second, subsection (A)(2) only mandates payment by an insurer when the insurer and third-party claimant have produced a written settlement agreement. *Id.* Since neither party suggests that a settlement was reached between State Farm and Kelly, Kelly cannot maintain a cause of action under subsection (A)(2). State Farm is thus entitled to judgment as a matter of law. Therefore, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

## B

Section 22:1973 contains two relevant subsections: subsection (A) describes broad duties that insurers owe to their insured and subsection (B) lists acts which constitute a breach of insurers' duties when knowingly committed. Subsection (A) states that insurers owe their insured "a duty of good faith and fair dealing" and an "affirmative duty . . . to make a reasonable effort to settle claims." La. Rev. Stat. § 22:1973(A).[4] Two parts of subsection (B) are relevant

---

[4] The parties debate how the Fifth Circuit's opinions in *Commercial Union Insurance Co. v. Mission Insurance Co.*, 835 F.2d 587 (5th Cir. 1988), and *Brown v. Liberty Mutual Fire Insurance Co.*, 168 F. App'x 558 (5th Cir. 2006), impact this case. In *Commercial Union*, the court held that "Louisiana law only imposes liability for an excess judgment against a primary insurer if that insurer failed to accept an actual offer to settle within its policy limits and such failure was negligent, arbitrary and/or in bad faith." 835 F.3d at 588. The court reached this conclusion while acknowledging that "Louisiana courts have not explicitly articulated the requirement . . . that a firm settlement offer be on the table before an insurer can be held liable for its arbitrary refusal to settle." *Id.* at 588 n.2. In *Brown*, an unpublished decision, the court rejected the bad-faith claim at issue in part because a letter sent by the plaintiff did not constitute an actual offer. 168 F. App'x at 563.

While the precise scope of a bad-faith failure-to-settle claim probably deserves attention from the Louisiana Supreme Court, we are nevertheless bound by prior precedent holding that an actual offer is required in order to maintain such a claim. *See French v. Allstate Indem.*

No. 12-31064

here: (B)(1), which forbids "misrepresenting pertinent facts . . . relating to any coverages at issue[;]" and (B)(5), which states that an insurer violates its duty if it "[f]ail[s] to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." *Id.* §§ 22:1973(B)(1), (B)(5).

While subsection (A) states the duties of insurers in broad, precatory terms, the Louisiana Supreme Court has held that the list of conduct in subsection (B) constitutes the exclusive list of conduct that provides a cause of action under § 22:1973. *Theriot v. Midland Risk Ins. Co.*, 95-2895, p. 15–16 (La. 5/20/97), 694 So. 2d 184, 193. The Louisiana Supreme Court considered the scope of § 22:1973 in the context of third-party claims, but intermediate Louisiana courts have nevertheless interpreted *Theriot* as holding that subsection (B) provides an exhaustive list of possible causes of action for the insured under § 22:1973. *See, e.g.*, *Arvie v. Safeway Ins. Co. of La.*, 2006-1266, p. 2 (La. App. 3 Cir. 2/7/07), 951 So. 2d 1284, 1285; *McGee v. Omni Ins. Co.*, 2002-1012, p. 7–8, 10–11 (La. App. 3 Cir. 3/5/03), 840 So. 2d 1248, 1254, 1256.

1

A violation of (B)(1) "can occur when an insurer either makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent

---

*Co.*, 637 F.3d 571, 589 (5th Cir. 2011) (affirming binding effect of prior Fifth Circuit precedent on a state-law issue absent a clear change in law). Since the January 2006 letter from Kelly's attorney only stated that Kelly's attorney would "recommend" a release in exchange for payment of the policy's limit, the letter did not constitute an offer. *See McPherson v. Cingular Wireless, LLC*, 2007-0462, p. 5–7 (La. App. 3 Cir. 10/3/07), 967 So. 2d 573, 577–78 (holding that "noncommittal" language in an employee handbook did not modify the parties' contract of employment); Restatement (Second) of Contracts § 26 (1981) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."). Therefore, Kelly cannot maintain a cause of action as a matter of law, and State Farm was entitled to summary judgment on Kelly's bad-faith failure-to-settle claim.

8

facts to the insured." *McGee*, 840 So. 2d at 1256. Some intermediate appellate courts have held that (B)(1) is only violated when an insurer misrepresents facts about coverage, not facts concerning liability. *See, e.g.*, *Talton v. USAA Cas. Ins. Co.*, 2006-1513, 2007-1414, p. 20 (La. App. 4 Cir. 3/19/08), 981 So. 2d 696, 710; *Strong v. Farm Bureau Ins. Co.*, 32,414, p. 5 (La. App. 2 Cir. 10/29/99), 743 So. 2d 949, 953. "A misrepresentation relating to a coverage issue would involve facts about the policy itself, such as the amount of coverage, lapse or expiration of the policy, or exclusions from coverage." *Strong*, 743 So. 2d at 953. An insurer also has "an <u>independent</u> duty to keep its insured informed of the status of settlement negotiations[.]" *Teague v. St. Paul Fire & Marine Ins. Co.*, 2006-1266, p. 62 (La. App. 1 Cir. 4/7/09), 10 So. 3d 806, 845. This includes a duty to inform the insured about offers to settle that are made and received, offering input on the settlement decision, and generally keeping the insured apprised of those facts necessary for the insured to make a decision that is in their own personal interest. *Arvie*, 951 So. 2d at 1285; *McGee*, 840 So. 2d at 1254, 1256; *Lafauci v. Jenkins*, 2001-2960 (La. App. 1 Cir. 1/15/03), 844 So. 2d 19, 27-29. As explained below, it is not clear that State Farm is entitled to judgment as a matter of law on Kelly's (B)(1) claim. As such, we reverse the district court's grant of summary judgment.

In *McGee*, an insurer was found to have violated (B)(1) when it "consistently failed to communicate the status of the claim to [the insured] on a regular basis" and, when it did communicate with the insured, it "failed to communicate the pertinent facts necessary for [the insured] to consider in determining what was in her personal interest." *McGee*, 840 So. 2d at 1256. The insurer in *Arvie* committed similar bad faith conduct and also "failed to offer [its insured] input into the settlement decision." *Arvie*, 951 So. 2d at 1286. The only communication between State Farm and Thomas alleged here consisted of a single letter in which State Farm told Thomas that he might face personal

No. 12-31064

liability and that he should consider seeking independent counsel.  At no point did State Farm inform Thomas the extent to which Kelly's medical bills exceeded his policy limits, nor did State Farm tell Thomas that it had made a settlement offer that was rejected by Kelly.  In short, State Farm sent a single, cursory communication to Thomas, and it cannot be said as a matter of law that this letter communicated the pertinent facts necessary for Thomas to determine what was in his best interest.  Therefore, State Farm was not entitled to judgment as a matter of law on Kelly's claim under § 22:1973(B)(1).  Fed. R. Civ. P. 56(a).

2

Under § 22:1973(B)(5), it is the plaintiff's burden to show that the insured submitted a satisfactory proof of loss, which is one that is sufficient to fully apprise the insurer of the insured's claim.  *Reed v. State Farm Mut. Auto. Ins. Co.*, 2003-0107, p. 13 (La. 10/21/03), 857 So. 2d 1012, 1020 (stating that the "one who claims entitlement" has the "burden of proving" receipt of a satisfactory proof of loss); *see also McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985) (defining "satisfactory proof of loss").  Moreover, § 22:1973(B)(5) does not provide a cause of action based on third-party proofs of loss.  *Langsford v. Flattman*, 2003-0189, pp. 3–4 (La. 1/21/04), 864 So. 2d 149, 151.

Kelly's claim under § 22:1973 fails for the same reason that his claim under § 22:1892(A)(1) failed, *see supra* Part III.A: Kelly has not alleged that Thomas submitted a proof of loss to State Farm that went unpaid.  Rather, the premise of Kelly's case is his allegation that State Farm failed to act when his attorney sent State Farm a third-party demand letter.  As discussed earlier, assuming *arguendo* that Kelly's letter constituted a satisfactory proof of loss at all, the letter was a proof of loss from a third-party claimant.  The assignment between Kelly and Thomas does not allow Kelly to shoehorn otherwise ineligible claims into Louisiana's insurance statutes.  Section 22:1973 does not provide a

cause of action when an insurer fails to pay a third party's claim based on a proof of loss.  Therefore, summary judgment is appropriate.  Fed. R. Civ. P. 56(a).

## IV

For the foregoing reasons, we AFFIRM IN PART and REVERSE IN PART the district court's grant of summary judgment.  We REMAND to the district court for further proceedings consistent with this opinion.