# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2024

Lyle W. Cayce
Clerk

No. 23-20036

Roy Williams,

*Plaintiff—Appellant*,

*versus*

Estelle Unit Prison Officials; Jacob Little; Sergeant
Zachary T. Anderson; Dennis N. Ayienda; Onyinye
Omeludike; Azeez O. Sanusi; Diogene Simo Wassu;
Dominick Yanez; Nurse Northcutt; Major Brumley,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2276

_____

Before Wiener, Haynes, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:[*]

Appellant Roy Williams ("Williams") is a state inmate in the Estelle Unit of the Texas Department of Criminal Justice ("TDCJ"). Williams sued officers in the Estelle Unit ("Defendants") under Section 1983 for excessive force, and a TDCJ nurse ("Northcutt") for failure to provide medical

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

attention. The district court dismissed his claims with prejudice for failure to exhaust administrative remedies. On appeal, Williams argues that the Step 1 and Step 2 grievances which he filed were sufficient to meet the standard for exhaustion. We AFFIRM in part and VACATE and REMAND in part.

## I.

On June 13, 2021, Williams requested to remain in respite after receiving treatment from medical staff.[1] After a verbal back-and-forth with an officer who refused his request, Williams was ordered to put his hands behind his back, which he did. Williams was then "slammed to the floor," "[roughed] up," and taken to a cell, where he was ordered to relinquish the restraints on his hands. Because he was "stuck with some type of needle," he "snatch[ed his] hands away from the officers." Williams was subsequently pepper-sprayed, knocked to the floor by the officers who rushed into the cell, and beaten. Williams' "tooth was chipped" and "eye was split open." Williams was also repeatedly stuck with a needle, and an officer pushed a pencil into his rectum. Following these events, Williams claims that Nurse Northcutt denied him medical care and instead falsely reported that he refused treatment. On September 13, 2021, he was rushed to the hospital because, according to Williams, the pencil ruptured his colon.

According to the officers, Williams did not obey orders to submit to hand restraints, which resulted in the first use of force against him. After being restrained and escorted to a cell, Williams then did not obey orders to relinquish the restraints, which resulted in the second use of force, which included the use of "chemical agents" and "a 5 man cell extraction team . . . to retrieve[] the hand restraints."

---

[1] The facts in this section are taken from Williams' pleadings and supplemented by the record. *See Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

No. 23-20036

Williams was charged with causing a "significant disruption of operations." After a hearing on June 23, 2021, Williams was disciplined with loss of recreation and commissary days, and a reduction of his custody class.[2]

As is discussed in greater detail below, Williams appealed this determination by filing what in Texas prisons are known as Step 1 and Step 2 grievances. After initially overturning its disciplinary order, the prison reversed course and affirmed.

On November 9, 2021, Williams, proceeding *pro se*, filed claims against eight correctional officers at the Estelle Unit, alleging they used excessive force against him; and also filed claims against Nurse Northcutt, alleging she refused to treat his injuries after the use of force. Defendants and Nurse Northcutt moved for summary judgment. They argued that Williams did not exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a),[3] and attached documents related to Williams' grievances as support.

The district court agreed that Williams failed to administratively exhaust his remedies, granted summary judgment, and dismissed the case with prejudice.[4] It determined that the Step 1 grievance was not "as to the uses of

---

[2] "On the unit of assignment, an offender is given a custody designation which indicates . . . where and with whom he can live, how much supervision he will need, and what job he can be assigned to. An offender's custody level depends on his current institutional behavior, his previous institutional behavior, and his current offense and sentence length." TDCJ, Offender Orientation Handbook 5 (Feb. 2017).

[3] Though this is a threshold issue, exhaustion is merely a "rule of judicial administration," rather than a requirement for jurisdiction. *See Dillon*, 596 F.3d at 271–72 ("A prisoner's failure to exhaust administrative remedies does not deprive courts of subject matter jurisdiction in suits covered by the PLRA.").

[4] "Because any new grievance filed by plaintiff would be time-barred under TDCJ's grievance procedures," the district court held that Williams' failure to exhaust could not be cured.

force themselves"; instead, "the sole relief . . . sought . . . was to set aside the disciplinary conviction sanction that had reduced [Williams'] line status." The district court emphasized that the Step 1 grievance identified neither "particular actions" nor specific "prison employees involved in the alleged wrongful conduct," in contrast with the facts alleged in Williams' lawsuit. Williams therefore did not provide "proper notice to address his alleged excessive force claim."

Williams timely appealed. After briefing concluded, Williams also filed a motion in this court for appointment of counsel.

## II.

### A.

We review *de novo* a district court's grant of summary judgment, "applying the same standard[] as the district court." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (citations omitted). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). "A dispute is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party," and "[a] fact issue is 'material' if its resolution could affect the outcome of the action." *Id.* (citing *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)). All facts and inferences must be construed in the light most favorable to the nonmoving party. *Id.* (citations omitted). Finally, as Williams is *pro se*, we "liberally construe [his] briefs." *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993).

"Failure to exhaust is an affirmative defense, for which the defendant has the burden of proof." *Donahue v. Wilder*, 824 F. App'x 261, 265 (5th Cir. 2020) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Therefore, "[a]t the summary-judgment stage, . . . defendants 'must establish beyond

peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor.'" *Id.* (quoting *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015)) (alteration in original).

## B.

The PLRA requires a prisoner to exhaust all administrative remedies available in the prison's grievance process prior to filing suit. *Huskey v. Jones*, 45 F.4th 827, 831 (5th Cir. 2022). This requirement "applies to all inmate suits about prison life," including those "alleg[ing] excessive force." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

"The level of detail necessary in a grievance . . . will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Because Williams is in TDCJ custody, the TDCJ grievance procedures—which are laid out in Texas' Offender Orientation Handbook—govern. Per the Handbook, Texas inmates must first follow an internal grievance procedure before filing suit. In particular:

> Prior to filing a grievance, an inmate must try to resolve the issue informally. If that does not work, the prisoner must file a Step 1 grievance within 15 days of the "alleged incident or occurrence." When filing a grievance, an inmate must "clearly state[ ]" "[t]he specific action required to resolve the complaint." Prison officials then have 40 days to decide the grievance. If the prisoner remains dissatisfied, he may appeal by filing a Step 2 grievance within 15 days. Prison officials have another 40 days to issue a decision on the appeal. Only after exhausting both steps of that grievance process may a prisoner file suit.

*Ramirez v. Collier*, 595 U.S. 411, 421–22 (2022) (quoting TDCJ, Offender Orientation Handbook 73–75 (Feb. 2017) (hereinafter, "Handbook")) (other citations omitted).

No. 23-20036

The Handbook includes several other instructions relevant here: It instructs prisoners to "completely fill[] out the [grievance] form[s]," Handbook at 73, "[p]resent only one issue per grievance," *id.* at 74, and "clearly state[]" "the specific action required to resolve the complaint," *id.* at 75. The grievance form, in turn, instructs inmates to "[s]tate [their] grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate." The Handbook further provides that grievances cannot be submitted "in excess of one every seven days," and must be neither "redundant" ("repeatedly griev[ing] matters already addressed in a previous grievance"), nor "excessive," but instead must be expressed "in the space provided." Handbook at 75.

### III.

The only question before us is whether Williams' Step 1 and 2 grievances alleged sufficient material to satisfy the PLRA's exhaustion requirement.

### A.

The seminal case setting forth "the standard . . . for assessing the sufficiency of a grievance" in this circuit is *Johnson v. Johnson,* 385 F.3d 503 (5th Cir. 2004). *Burling v. Simon*, 406 F. App'x 855, 856 (5th Cir. 2010). As *Johnson* established, fair notice is the central objective of the exhaustion requirement and thus should be the relevant benchmark: "[i]n deciding how much detail is required in a given case, . . . a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'" *Johnson*, 385 F.3d at 516 (quoting *Nussle*, 534 U.S. at 525). "Thus, a grievance should be considered sufficient to the extent that [it] gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Id.* at 517.

6

There is no bright line requirement for the detail required for a sufficient grievance. "[A]s a practical matter, the amount of information necessary will likely depend to some degree on the type of problem about which the inmate is complaining." *Id.* Grievances need to identify problems, but need not necessarily advance specific legal theories. *Id.* at 517. Indeed, grievances need not even necessarily identify specific individual defendants; the Supreme Court approvingly echoed *Johnson* to emphasize that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued" and that "the grievance is not a summons and complaint that initiates adversarial litigation." *Jones*, 549 U.S. at 219 (quoting *Johnson*, 385 F.3d at 522). "[A] grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like—e.g., a reference to 'the guards in the shower room' on a certain date—would suffice." *Id.* at 523.

## B.

With this standard in mind, we begin with Williams' claim regarding denial of medical care. On July 27, 2021, Williams filed a Step 1 grievance (No. 2021141763) over his denial of medical care for the "injuries . . . obtained due to an excessive use of force by prison authorities on June 13, 2021." However, as there is no record of a Step 2 grievance being filed for this complaint, this claim was properly dismissed.

## C.

We next examine Williams' excessive force claim.

### i.

On June 28, 2021, Williams filed a Step 1 grievance (No. 2021127992). On the grievance form, Williams wrote "this is an appeal of case #20210207563." He stated that although he "was written [up in] disciplinary

case #20210207563 [for] refus[ing] the application of hand restraints," "[v]ideo . . . [would] show that [he] did not refuse to submit to the[m]." He alleged that "the case was written simply to justify *the excessive use of force* used against [him]," and he was unable to "appear[] before a Committee to give [his] side of the story." Furthermore, Williams wrote that he was "being treated unfair[ly] due to the violations of prison policy and rules by the prison staff who were involved in *the excessive use of force* against [him]," "the whole administration including the medical department is conspiring against [him] in order to cover up *the excessive use of force*," and he "was abused by prison officials unjustly, and . . . [was] being penalized for that abuse." In the section titled "Action Requested to resolve your Complaint," Williams requested restoration of his custody and status.

On August 13, 2021, the prison officials notified Williams that an investigation had been conducted, revealing "procedural errors"—which were neither specified nor further explained—and as a result, Williams' disciplinary case was "overturned."

Although Williams was "satisfied" with this response to his Step 1 grievance, he nonetheless filed a Step 2 grievance six days later, on August 19, 2021, "simply [as] a procedur[al] prerequisite" for "legal action against the officials that *assaulted* [him]." The grievance stated that Williams "was the victim of a[] *use of force*" that was "inappropriate employee action, and violated [his] civil rights, [his] constitutional rights, [and] his human rights." Two months later, on October 4, 2021, TDCJ notified Williams that its review was completed, and "after further review" of the case, "no procedural errors were found." As a result, the decision overturning the disciplinary case was reversed and "the disciplinary case [was] upheld."

ii.

Because Williams' grievances referenced specific events and provided identifying details that he was the victim of "assault" and "excessive use of force"—notably, giving his identifying disciplinary case number—we agree "that [his] grievance[s] alerted the prison administrators to wrong doing."

First, it is indisputable that Williams highlights excessive force throughout his grievances. Williams' Step 1 grievance references, in at least four instances, prison employees' "abuse" and use of "excessive force" on him. It is true, as the district court reasoned, that Williams had denoted the grievance as "an appeal of case #20210207563," his disciplinary case, instead of delimiting his grievance as a standalone claim of excessive use of force. That the focus of the grievance was on overturning disciplinary sanctions does not change the fact that it plainly complains that he suffered "unfair" treatment and "was abused by prison officials unjustly," and that the excessive force constituted "violations of prison policy and rules by the prison staff." Indeed, Williams' predicate for overturning his discipline was his contention that the Defendants assaulted him. True or not, those statements "g[a]ve prison officials 'fair notice' of the problem that . . . form[s] the basis of [Williams'] suit"—*their* excessive force, not *his* disruptive actions. *Johnson*, 385 F.3d at 516.

Importantly, Williams had to follow the TDCJ's requirements, which require that grievances be: limited to "one issue per grievance," Handbook at 74; submitted no more than once every seven days, *id.* at 75; "stated on one form and in the space provided," *id.*; and not "grieve matters already addressed in a previous grievance," *id.* It is no answer to suggest that Williams should have submitted *another* grievance to request compensatory damages for excessive force. That would not only ignore the court's admonition that grievances need not plead specific legal theories, but also violate the

No. 23-20036

TDCJ's rules mandating one issue per grievance and barring more than one grievance every seven days. As a practical matter, it is then hardly surprising that Williams, in the small space allotted for his description, would focus on the injuries and remedies most immediate: his loss of various prison privileges.[5] It would also be unreasonable to fault Williams for including his disciplinary case number, given that the grievance form itself instructs inmates to "state . . . the disciplinary case number if appropriate."

That Williams' Step 2 grievance elaborates on his excessive force allegations is also highly significant. Although "[n]ew issues cannot be raised for the first time in a Step Two," excessive force was not a new issue. In Step 2, Williams wrote that officials "assaulted him," and that he "was the victim of a[] use of force" that was "inappropriate employee action, and violated" his "civil" and "constitutional rights." This restates his allegations in his Step 1 grievance of "unfair" treatment and "abuse[]" from "violations of prison policy and rules by the prison staff who were involved in the [exc]essive use of force against [him]."

iii.

Most importantly, Williams' grievance provided enough notice to enable TDCJ officials to investigate the issue—and indeed, to issue a Use of Force report—which is the touchstone of the exhaustion inquiry. "[I]n determining exhaustion under the PLRA, . . . [t]he complaint must be sufficient in detail to give officials 'time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 788 (5th Cir. 2012), *as corrected* (Feb. 20, 2013) (quoting *Nussle,* 534 U.S. at 525).

_____

[5] As the district court noted, the grievance only requests restoration of his previous status—not compensatory damages connected with the officers' use of force.

The district court noted that Williams' grievance does not identify any specific physical injuries or specific TDCJ employees. As previously discussed, however, a failure to name defendants individually is not dispositive of exhaustion. Indeed, we have found exhaustion satisfied despite failure to identify the specific individuals where the grievance offers general descriptions, or subsequent actions plainly indicate the grievances gave sufficient notice. *See Herschberger v. Lumpkin*, 843 F. App'x 587, 591–92 (5th Cir. 2021) (holding inmate exhausted grievance against unidentified prison officers because he provided sufficient details and TDCJ "expressed no confusion about the particular incident or issue" in response); *Patterson v. Stanley*, 547 F. App'x 510, 512 (5th Cir. 2013) (holding grievance against "medical staff" sufficient where TDCJ did not reject the claims or indicate it was unaware that the Step 2 grievance was directed at an issue raised at Step 1, but instead took responsive action).

Moreover, Williams' grievance specifically referenced the case number for his disciplinary hearing and investigation. This is significant because TDCJ officers had documented all the facts relevant to their uses of force in various reports and memoranda, and these documents are a part of Williams' grievance records. Williams' specific reference to the case number thereby functionally served as a cross reference, allowing identification of the necessary information.

Critically, these investigation documents demonstrate that TDCJ actually had notice of the time and place of the incident on June 13, as well as Williams' allegations as to the harm he may have suffered. They also demonstrate that TDCJ had notice of the identity of the specific officers who were involved. For example, a "Use of Force Report" clearly identifies by name all the officers who participated as well as witnessed the incident, and even included their written statements.

The documents also demonstrate that TDCJ did in fact investigate the incident, which would by necessity have involved consideration of whether the force used by the officers was excessive—or, in other words, evaluation of Williams' excessive force claim. The "Use of Force Report" not only contains details regarding where and when the use of force occurred, but also the specifics of what happened—for instance, details about the "chemical agent" officers used against Williams—and evidence that TDCJ evaluated and did not find excessive force. This evidence indicates that TDCJ had sufficient notice to have "the time and opportunity to address complaints internally." *Moussazadeh*, 703 F.3d at 788; *cf. Patterson*, 547 F. App'x at 512 (emphasizing that TDCJ took responsive action); *Herschberger*, 843 F. App'x at 591–92.

iv.

That this court takes "a strict approach" to the exhaustion requirement—whereby it declines to find "mere 'substantial compliance' with administrative remedy procedures" to satisfy those requirements—does not alter our conclusion. A survey of the authorities invoked indicate that those cases concern circumstances involving significant procedural defects—such as failing to file a first or a second step grievance—that are absent here.

*Days v. Johnson*, for instance, concerned an inmate who was "unable to timely complete and file a Step 1 grievance form" due to the very injury about which he wished to complain. 322 F.3d 863, 866 (5th Cir. 2003), *overruled by implication on other grounds by Jones*, 549 U.S. at 216. Even then, we vacated the dismissal because "there [was] no indication that [the inmate] could have timely filed the grievance," and thus his untimely attempts "exhausted the administrative remedies that were personally available to him." *Id.* at 867. In *Dillon v. Rogers*, we explained that even if the inmate's purported grievances "could qualify as 'first step' grievances applicable to the

claims advanced in this suit, [he] never pursued them to the 'second step' of the . . . process." 596 F.3d 260, 267 (5th Cir. 2010). Even so, we remanded to the district court for discovery on whether administrative remedies were actually available to the inmate. *Id.* at 269. *Days* and *Dillon* therefore stand for the important proposition that exhaustion should be "strict" in assessing process, rather than in narrowly construing the sufficiency of the content of grievances.

Defendants also invoke *Butts v. Martin*, where we found an inmate's claims were not properly exhausted against certain defendants and as to certain claims when his grievances "did not accuse any of them of wrongdoing" or complain of improper searches, respectively. *See* 877 F.3d 571, 583–84 (5th Cir. 2017). But crucially, we also *reversed* the district court's dismissal for failure to exhaust for one of his claims for retaliation and violation of religious rights, noting that even though the inmate's "grievance forms only challenged the correctness of his disciplinary conviction," the inmate had consistently complained of the issue "throughout the administrative grievance process." *Id.* at 583.

On the specific facts before us, where Williams' explicit reference to his disciplinary case clearly alerted the prison to the "problem that [would] later form the basis of the suit," *Jones*, 549 U.S. at 205—and the record shows the question of excessive force was, in fact, inextricable and investigated and evaluated—we disagree that Williams failed to exhaust his excessive force claim. Given the factual questions that remain, we remand to the district court for analysis in the first instance. Of course, to the extent that any of Williams' allegations cannot be substantiated, they would not survive summary judgment on the merits.

## IV.

Also before us is Williams' motion for counsel, which was filed after briefing on the administrative exhaustion issue concluded.

Courts are "not required to appoint counsel for an indigent plaintiff asserting a claim under 42 U.S.C. § 1983 unless the case presents exceptional circumstances," *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982) (citation omitted), though they have the "discretion to appoint counsel if doing so would advance the proper administration of justice." *Id.* at 213. In making this determination, we consider: "(1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination." *Id.* (citations omitted).

Given the straightforward nature of the issue at this point, the limited scope of previous discovery, and Williams' representation of himself thus far, we conclude that we should not order the district court to appoint counsel, but the district judge should carefully consider appointing counsel upon remand.[6]

## V.

For the foregoing reasons, we AFFIRM the dismissal of Williams' medical claim; VACATE the dismissal of Williams' excessive force claim AND REMAND for further proceedings consistent with this opinion; and DENY without prejudice the motion to appoint counsel but REMAND that issue to the district court.

------

[6] To the extent that this motion attempts to appeal the district court's denial of his four previous motions for appointment of counsel, we would affirm for the same reasons.